COURT OF APPEALS OF WEST VIRGINIA.     285

July Term,     Nadenbousch *et al.* vs. Sharer *et al.*     1867.

# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

Absent, HARRISON, J.*

## J. Q. A. NADENBOUSCH AND WILLIAM N. RIDDLE vs. SHARER & MARTIN.

### July Term, 1867.

1. It is sufficient if any one of a number of defendants make the preliminary affidavit required by the act of February 28th, 1865, in relation to oaths by suitors; and the making of any such affidavit will warrant the dismissal of the suit upon the failure of the plaintiffs, or some one of them, to take and file the oaths required by that act.

2. A supersedeas, while it is a continuation of the original suit, is also a new suit in the sense of the act requiring oaths by suitors; and an error in the judgment of the court below is a cause of action within the meaning of the statute on that subject. Hence a supersedeas granted on a judgment rendered after the first day of April, 1865, is a new suit within the meaning of the act passed March 1st, 1866, and is not affected by the act passed February 28th, 1865.

3. A defendant can plead as many matters of law and fact as to him may seem necessary to his defense, and the facts stated in one or more of them cannot be used as evidence or admission to disprove anything contained in the other's, nor to sustain the plaintiff's declaration. Therefore, where a defendant has pleaded not guilty in an action of trespass for taking and carrying away the goods of another, and also specially pleaded justification by reason of being in the service of the Confederate States of America, and the special pleas have been demurred to and the demurrer sustained, it is error for the circuit court to permit the plaintiff to offer the special pleas to go to the jury to prove the trespass; and to instruct the jury that the defendant is estopped on the issue joined on the plea of not guilty, from denying the alleged trespass. And if the plaintiff fails to prove the allegations of the declaration by other evidence independent of the defendant's special pleas, the plaintiff cannot recover.

4. Exceptions to the rulings of the circuit court occurring during the trial, ought to be taken before the jury retires. And though it is not necessary to stop the progress of the trial to prepare the bills, yet, at least, the coun-

*See page 187.

sel in every instance should state to the court his intention to except, and save the point; and afterwards during the term prepare the bill and present it to the court for his signature. But an exception to the opinion of the court expressed in its charge to the jury after the evidence is closed, may be taken at any time before the verdict is announced.

*George Sharer* and *S. H. Martin*, partners under the firm and style of *Sharer & Martin*, brought suit against *John Q. A. Nadenbousch* and *William N. Riddle*, for trespass in taking and carrying away the goods of the plaintiff, claiming 5000 dollars damages, in the circuit court of *Berkeley* county. The defendants filed the plea of not guilty, and three special pleas embracing what is generally known as "belligerent rights"—*i. e.* that at the time of the alleged taking and carrying away they were in the service of the armies of the Confederate States of America.

On the plea of not guilty issue was joined, but demurrers were entered to the special pleas, and the demurrers sustained. The cause was heard on the 11th day of December, 1865, and a verdict rendered by the jury for 2300 dollars and judgment entered thereon by the court. The defendants moved the court to set aside the verdict and grant a new trial on account of excessive damages, but the court overruled the motion and defendants excepted.

There was another bill of exceptions in the record, as it came to this court, which was in the following words :

"Be it remembered that upon the trial of this cause the plaintiffs offered in evidence the joint special pleas of the defendants, which had been demurred to, and the demurrer sustained thereto, the admission of which as evidence the defendants objected; but the court permitted said pleas to be read in evidence before the jury, and instructed them that by said pleas the said defendants were estopped under the issue joined upon the plea of 'not guilty,' from denying the alleged trespass in the declaration mentioned, to which opinion of the court the defendants by their counsel except, and pray this their bill of exceptions may be signed, sealed, and enrolled ; which is done accordingly."

These were all the exceptions in the record; and no other evidence therein appeared except that mentioned in the last bill of exceptions.

A preliminary question was determined before the cause was heard upon its merits, which is stated in an opinion of the President that was delivered separately, and which here precedes the opinion on the merits.

*Chas. J. Faulkner*, for the plaintiffs in error, in opposition to the rule, entered into an examination of the history, policy, and provisions of the act of the 28th of February, 1865, and contended, that it was not the intention of the legislature to deprive the appellants of their legal and constitutional redress before the supreme appellate court of this State. The act was passed *flagrante bello*,—and was a statutory application to the peculiar condition of affairs in this State, of the common law principle, that the courts of this State should not be used by plaintiffs who were alien enemies. It contemplates a disability in *plaintiffs* only. It suspends temporarily the remedy by action. It never was designed to assert the proposition, that a *defendant* might by judicial process be dragged before the tribunals of this State, and denied any or all of the defences which the nature of his case required. Such a practice is unknown in any civilized country. Even an *out-law* if brought before the court is entitled to make full defence. *Aldridge* vs. *Buller*, 2 M. & W., 412. And Justice Channel, referring to the case of *Aldridge* vs. *Buller*, and distinguishing it from the case at bar says: "The defendant *there* was an out-law; he was brought into court by the plaintiff; and when brought into court, he had a right to defend himself against any proceedings which were instituted against him. For it would be applying the rule to a monstrous extent to hold, that an out-law is not to be allowed to defend himself against a claim of a plaintiff who has brought him into court." *Sowerby* vs. *Wadsworth*, 2 Hurlstone and Collman's Reports, p. 707.

The word "supersedeas" in the fourth section, was manifestly no part of the original bill, but must have been in-

serted in the passage of the bill through the legislature. The section is grammatically more perfect without that word; but being there, the court should construe it in harmony with the entire law. That can only be done by supposing that the legislature meant to embrace that class of supersedeas where the plaintiff is seeking to recover something of the appellee, not where the appellant is acting wholly on the defensive. See the lucid distinction of Chief Justice Marshall on this subject, so clearly laid down in the case of *Cohens* vs. *State of Virginia*, 6 Wheaton, pp. 407, 409.

He next referred to the act of the first of March, 1866.

That act was designed as a measure of relief to those who were subject to the restrictions of the law of the 28th of February, 1865. It was passed after the proclamation of peace, and it proposed to extend relief in two forms. 1st, By repealing the law as to all causes of action accruing since the first of April, 1865. 2d, By increasing the difficulties of those who sought to avail themselves of the law so far as it was not repealed. By this act, a defendant is now required to authenticate his own loyalty before he can put the plaintiff to the proof of his, and this evidence of loyalty must be furnished not by *one* of several defendants, but by all. In the case now before the court, but *one* of the appellees has taken the required oath.

But the other provision of the section, he regarded as conclusive of the point before the court. The cause of action for which the appellants presented their petition for a supersedeas, had its origin on the 11th day of December, 1865, when an illegal judgment was rendered against them. Before that day, they had no cause of action, or as Bracton and Fleta express it, in the words of Justinian, no "*jus prosequendi in judicio quod alicui debetur.*" They were simply defending themselves against an adverse, and as they believed, an unjust demand. The illegal judgment rendered against them in December, 1865, gave them for the first time a cause of action—a ground for complaint—a *jus prosequendi,*—and that could only be made available before the

court. Their case stands fully within the letter and spirit of the relief provided by the act of the first of March, 1866.

On the merits of the case Mr. Faulkner said:

It is difficult to comprehend what the counsel for the Appellees mean when they say, that the bill of exceptions in this case *is no part of the record*. It has been signed by the judge, and thus made by a statute, a part of the record of the case. Code of 1860, p. 732, sec. 8. It has not only been made a part of the record in the ordinary form by the signature of the judge, but it is actually spread out at length upon the journal entry of the court. (See clerk's certificate). The bill of exceptions signed by the judge has no connection with the unfinished paper founded upon the refusal of the court to grant a new trial, and which was subsequently abandoned by the defendants, but which the clerk from mere inexperience also spread in its imperfect state upon the journal entry of the court. The order of time in which the clerk places a paper on the record is perfectly immaterial. Bills of exception appear ordinarily subsequent to the verdict. Upon the face of this bill of exceptions it appears that the point was made during *the trial of the cause* —consequently before verdict; that the admissibility of these pleas *to be read as evidence before the jury*, was objected to as soon as presented—and even if the bill of exceptions had not been signed and enrolled on the *same day* that the exception was taken and the case submitted to the jury, as it appears from the record was done, it is not a material fact. If there was any objection to the regularity of the bill of exceptions, when signed by the judge, that objection should have been taken at the time, and the grounds of objection made to appear on the record. 15 Grattan, *Washington & N. O. Tel. Co.* vs. *Hobson*, p. p. 140, 141.

The admission of these special pleas as evidence before the jury, accompanied by the instructions of the court, that the pleas *estopped* the defendants under the plea of not guilty from denying the trespasses alleged in the declaration, is so palpably in violation of every admitted principle of law,

that little need be said on the subject.   It is believed there is but one instance of a similar ruling in the judicial history of this country or of England since the statute of Anne. He referred to the case of *Jackson* vs. *Stetson*, 15 Mass. Reports, p. 48.   But even in that State, the effect of the doctrine was confined to a plea of *justification* in *slander*.   The general rule in that State in all other cases being in conformity to the established rules of evidence in England and in this country.    The legislature of Massachusetts promptly interfered and arrested the authority of *Jackson* vs. *Stetson*, and Chief Justice Marshall in the case of *Whitaker* vs. *Freeman* (U. S. C. C. N. C. 1 Dev. 27) in denying in strong terms, the authority of the case of *Jackson* vs. *Stetson* as law, declared, that that decision had greatly impaired the weight that would otherwise have been due the decisions of that respectable tribunal.   The doctrine announced by judge Balch would impair much of the value intended by the statute of Anne and the Code of Virginia, allowing a defendant to plead as many pleas as he may think necessary for his defence.    1st Starkie on evidence, p. 294, sec. 117. 3 Phillips on Evidence, p. 445.    Notes to case of *Jackson* vs. *Stetson*, 11 Mass. Reports in State Library.

*Stanton & Allison* for the defendants in error.

BROWN, President.

Sharer and Martin the defendants in error, obtained a rule or order nisi, in this cause at a former term in pursuance of the acts to prevent the prosecution of suits and the suing out of process by persons engaged in rebellion, dismissing the case unless the plaintiffs in error should take the oaths prescribed, and file them in the papers of the cause, or show cause against the same.

This rule, or order nisi, was based upon the affidavit of only one of the defendants in error, filed at the time the order was made.   And at the present term the plaintiffs in error showed cause and by their attorney move to discharge the rule upon the following grounds, viz:

1st. That by the act in relation to oaths of suitors, passed March 1st, 1866, it was necessary to sustain the rule, that the affidavits of both the defendants in error should have been filed in support of the rule, and since that was not done, when the rule was allowed, it could not be aided by filing the affidavit of the other defendant in error, at the present term, and after the objection had been taken to the sufficiency of the former to sustain the rule.

2d. That the judgment, complained of as erroneous, was rendered subsequent to the first day of April, 1866, and that by the provisions of the said act of March 1st, 1866, the act of February 28th, 1865 did not apply to them; for the reason that the cause of action was the error in the judgment, which error was committed after the 1st day of April, 1865, and therefore the cause of action arose after that day.

In reference to the first ground, it may be remarked, that the acts mentioned are in *pari materia*, and should be considered together in giving construction to each of them. By the second section of the former, a suit would not be dismissed if only one of several plaintiffs took and filed the oath required.   And by the act of February 11th, 1865, section 27, upon a kindred subject, it is provided, that a judgment or decree against several defendants may be opened, and a 'rehearing had upon an affidavit of any one of the defendants, as required by that act.   And by the first section of the act of February 28th, 1865, a suit would be dismissed upon the preliminary oath of *one* of several defendants, unless the plaintiffs, or *one* of them should take the oaths required.

The first act on the subject requiring suitors to take the oath of loyalty, was the act of May 15th, 1862, by which it was provided that before any person or persons should be entitled to sue out any civil process in any court of record, or before a justice of the peace, such person or persons should first take and subscribe the oath of allegiance prescribed by the act.   This act was passed early in the war, and was intended to debar those the use of the courts, who

were disloyal and seeking their overthrow.   But in practice
it was soon found that its requirements were so much neg-
lected, till the neglect was taken advantage of by the defen-
dants, that it became a trap to the unwary, and the loyal
were often turned out of court on the motion of the dis-
loyal.

The next act on the subject was the act of February 28th,
1865.   With that act there were two grounds of dissatisfac-
tion, which soon resulted in its modification by the legisla-
ture.   They were mainly these: 1st, That like the preceding
act, if it did not operate to dismiss the suits of loyal men,
at the instance of the disloyal, it enabled rebels to dismiss
the suits of rebels after hostilities had ceased.   2d, That it
debarred rebels from suing in the courts on future, as well
as past transactions.

From this review of these acts it would seem to have been
the intention of the legislature that no trial should be de-
feated in the one case, where one of the plaintiffs was loyal and
took the oaths required; and that in the other, a rehearing
should not be defeated where one of the defendants was
loyal and took the oath required.   But that the suit should
be dismissed where the defendants, or *any one* of them, took
and filed the preliminary oaths of loyaly; unless the plain-
tiffs, or *some one* of them, should take and file the oath of
loyalty required of them.

This view of the case seems to be most consonant with
the language of the act of March 1st, 1866, as well as the
intent of the legislature.   That act says: "Nor shall any
plaintiff be required to take any of the oaths prescribed by
said act, until the defendant, or defendants, shall take and
file with the papers of the cause, in addition to the oath re-
quired by said act for defendants, the same oath which
plaintiffs may be required to take under said act."

The last named act does not repeal the former laws, far-
ther than it operates a modification thereof.   Its object was
mainly to remove the grounds of dissatisfaction to the for-
mer laws, and prevent their application to all transactions
arising after the first day of April, 1865, and their improper

use by those who had been engaged in rebellion, to defeat the claims of those in like condition.

I conclude, therefore, that the intention of the legislature and the language of the acts concur in the construction, that requires the preliminary affidavit of the defendants, or any one of the defendants, to warrant a dismissal of the suit upon the failure of the plaintiffs, or some one of *them*, to take and file the oaths required of them. The first objection, therefore, taken by the plaintiffs in error to the rule, cannot be sustained.

Upon the second ground of objection it may be remarked, that while a supersedeas may well be, in one sense a continuation of the original suit, as explained by the court in the case of *Cohens* vs. *Virginia*, yet in another sense, and in the sense of the acts under review, it is manifest that it is to be regarded as a new suit; and the error in the judgment complained of, is a cause of action within the meaning of the statute. And since that arose after the first day of April, 1865, the act of February 28th, 1865, does not apply to this case.

The rule, therefore, should be discharged, and the order *nisi* set aside at the costs of the defendants in error.

On the merits of the cause the President said:

This was an action of trespass *de bonis asportatis* by the defendants in error against the plaintiffs in error, in which the general issue and three special pleas were pleaded. Upon the former there was issue, and to the latter demurrers and joinder, and the demurrers sustained. Upon the trial these special pleas, which justified the supposed trespasses complained of upon the assumption of belligerent rights by the confederate rebels, were offered in evidence to the jury by the adverse party, and though objected to by the parties pleading them, yet admitted by the court, which also instructed the jury that the said defendants (in the court below), "were estopped by said pleas under the issue joined upon the plea of not guilty, from denying the alleged trespasses in the declaration mentioned." To which opinion of the court the said defendants excepted.

I think there was no error in the ruling of the court in sustaining the demurrers to the belligerent pleas of justification, for the reason that the acts of the parties in rebellion against their lawful government and all others in like condition under whose orders and authority they assumed to act, were unlawful and unjustifiable, and it was not competent, therefore, for them to plead their wrongful acts in justification of themselves; nor are they protected therein by the law of nations from liability to the parties injured by their unlawful acts.  See *Hedges* vs. *Michael and others,* and *Williams* vs. *Freeland,* decided at the present term of this court.

I think, however, that the court erred in instructing the jury that, by said pleas the defendants were estopped under the issue joined upon the plea of not guilty, from denying the alleged trespasses in the declaration, or that said pleas were evidence at all to prove the facts pleaded in them. For while they might have been admissible for some purposes, such as to show that there were such pleas, or as in the case of pleas of justification in slander, might be used as evidence of the animus or malice to augment the damages, yet the authorities cited in the argument establish the principle too well to be now departed from, that under the statute of 4th and 5th Ann, of which ours is but the same in substance, allowing the defendant to plead as many several matters, whether of law or of fact, as he may think necessary for his defence, however inconsistent they may be with each other, the facts stated in one plea cannot be used as evidence or admission, to disprove those in another, nor to sustain the plaintiffs declaration.  For such purpose the special pleas of justification in question were not evidence, and if the plaintiffs failed to prove the allegations of their declaration by other evidence, independently of these pleas, there should have been a verdict for the defendants. And the bill of exceptions does not show what other, or whether any other, or that no other evidence was before the jury.  Since the pleas might have been given in evidence far some purpose, but not for the purpose of proving the

plaintiffs' case by way of admission of the facts stated in the pleas, the defendants should have asked the court to instruct the jury to that effect, and if the court refused, then to have excepted to its refusal. It was too general to rest upon a general objection to the admission of the pleas as evidence generally; since they might have been admissible as before stated for some purposes. The ground of objection should appear and the bill of exceptions ought to show that the party excepted to the ruling in that particular. See case of *Ruckman* and *Kuykendall* decided at the present term of this court.

It has been objected that the bill of exceptions in this case does not show that the exception was taken before the jury retired. The doctrine and practice on that subject are very fully reviewed and stated by Judge Daniel in delivering the opinion of the court in the case of *Washington and N. O. Tel. Co.* vs. *Hobson & Son,* 15 Grattan, 122. Exceptions to rulings occurring during the trial ought to be taken before the jury retires. And though not necessary to stop the progress of the cause to prepare the bill, yet at least the counsel in every instance should state to the court his intention to except and save the point, and ask the court to note the exception, and afterwards during the term, prepare the bill of exceptions if deemed necessary, and tender it to the court for its signature. Holt, C. J., in *Wright* vs. *Sharp,* 1 Salk., 288; *Sikes* vs. *Ransom,* 279; *Midberry* vs. *Collins,* 9 John., 345; *Horns* vs. *Buckley,* 8 Serg. & Rawl., 211; *Watton* vs. *United States,* 9 Wheat., 651; *Ex parte Martha Bradstreet,* 4 Peters, 102; *Pool* vs. *Hugor,* 11 Peters, 212; *Baldwin* vs. *State,* 6 Ohio Rep., 15; 5 Hill, 577; 6 Wend., 268; 3 Cowen, 32; and 15 Grattan, 122. But an exception to the opinion of the court expressed in its charge to the jury after the evidence is closed, may be taken at any time before the verdict is announced. *Jones* vs. *N. A. Ins. Co.,* 1 Binney, 38; 4 Dall., 249, S. C.; *Lanuse* vs. *Barker,* 10 John., 322.

Upon an inspection of the bill of exceptions, I think it clearly appears that the exception was taken pending the trial, and certainly before the verdict was returned by the

jury.   Such the language imports, and such is consistent with the duty of the court to give it, while it would have been inconsistent with the duty of the court to have given such a bill, if the exception had been taken after verdict, every intendment must be in favor of the bill where nothing appears on record in conflict with it.

I think, therefore, that judgment should be reversed for the error aforesaid, with costs to the plaintiffs in error, the verdict set aside and a new trial awarded, and the cause remanded to the circuit court of Berkeley for further proceedings to be had therein, in conformity with the principles above indicated.

Judge Maxwell concurred.

JUDGMENT REVERSED.