# CHARLESTON.

I. J. LOAR *et als. v.* TUNIS E. POLING *et als., upon Petition of* HERMAN D. POLING

(No. 6123)

Submitted April 23, 1929.     Decided April 30, 1929.

*Wm. T. George,* for appellant.

*J. Blackburn Ware* and *D. D. Stemple,* for appellee.

282

MAXWELL, JUDGE:

Herman D. Poling prosecutes this appeal from a decree of the circuit court of Barbour county sustaining a demurrer to a petition filed by him in the above styled chancery cause.

In 1914 Jonas A. Poling and his wife conveyed to their son, Tunis E. Poling, a tract of twenty-five acres of land in consideration of one dollar "and their maintenance said maintenance to be on the land." Tunis failed to discharge the obligations and requirements thus assumed by him. In 1921 he and his wife executed a deed of trust on the said land to the Federal Land Bank of Baltimore to secure a loan of $700.00. He incurred other indebtedness. Judgments against him were docketed in the county clerk's office. On the 15th day of November, 1922, he and his wife executed to his brother, Samuel, a deed for said land for the purported consideration of $2,000.00 cash. In August, 1923, this suit was instituted by certain of the creditors of Tunis for the purpose setting aside as fraudulent the last mentioned deed. Tunis E. Poling and Mary Poling, his wife, Samuel Poling, and the Federal Land Bank of Baltimore were the defendants. There was no appearance to said bill, and by default decree entered October 3, 1923, said conveyance was declared to have been made to hinder, delay and defraud the creditors of the said Tunis E. Poling and it was adjudged, ordered and decreed that the said deed be "cancelled, set aside and annulled, so far, and so far only, as it affects the debts of the said respective plaintiffs * * *," and commissioners were appointed to sell the land, subject to the lien of the Federal Land Bank of Baltimore. The special commissioners advertised the said property to be sold at public sale on the 24th day of January, 1924. Jonas A. Poling, on said date, tendered his petition setting forth his claim against the land. He alleged that he had a lien on the land by reason of the provision in the deed which he and his wife made to their son, Tunis, requiring that the grantors' maintenance should be on the land conveyed, and prayed that he be made a party defendant to the suit and that his petition be treated as an answer and cross-bill therein, and that the title to said land

be declared to be in him. This petition was not filed, but the sale which had been advertised by the special commissioners to be made on the date above indicated was not held on that date, and no subsequent effort was made to sell the land pursuant to the advertisement which had then been made.

Nothing further was done in the matter until May 1, 1925, when Tunis E. Poling and wife executed to Jonas A. Poling a release and quit-claim of any right, title or interest which they might have in or to the said land, and on the said date Samuel Poling and wife (he being the brother to whom Tunis had executed the deed of November 15, 1922, and subsequently declared to be in fraud of the rights of the creditors of Tunis), by deed, undertook to convey the said land to the said Jonas A. Poling for a purported consideration of $1,200.00 cash. On the following day, May 2, 1925, Jonas A. Poling executed a deed to his son, Herman D. Poling, the petitioner herein, undertaking to convey to the grantee the aforesaid tract of land in consideration of one dollar "and his maintenance", the same to be on the land.

No further action was taken until April, 1927, when the special commissioners who had been appointed by the decree of October 3, 1923, proceeded to advertise the said land for sale pursuant to the authority vested in them by the said decree, whereupon Herman D. Poling tendered his petition on the 18th day of April, 1927, alleging, *inter alia,* in substance, the matters hereinabove recited, praying that process issue against the said special commissioners and against all other necessary or proper parties; that the said special commissioners be forbidden to make sale of the said land until a final hearing might be had upon the petition, and that "petitioner be adjudged either to hold said tract of 25 acres of land free and acquit from any liens thereon and be decreed the title thereto, or that petitioner be decreed the sum of $1,000.00 as compensation for his services rendered to Jonas A. Poling for maintenance, support and care of him, and the same be decreed a lien, first in order of priority upon the said tract of land, and that the former decrees of sale of said tract of land be set aside and annulled and that petitioner be given a decree of the same for the collection of his said debt * * *."

Whereupon, upon waiver of process, a demurrer was interposed to said petition, which demurrer, upon consideration by the court, was sustained, and from the said action of the court in sustaining the demurrer, the petitioner, Herman D. Poling, prosecutes this appeal. A suspending order was awarded by the court, but it was expressly provided in said order that the same should not be construed as staying the right of the special commissioners to proceed to make sale of the property under the aforesaid decree of sale. It appears from the record that on the 7th day of May, 1927, said special commissioners did sell said property at public sale.

Should the demurrer to the petition of Herman D. Poling have been sustained? In seeking an answer to that query the first matter to be considered is as to the rights of Jonas A. Poling under the provisions of the deed which he made to his son, Tunis, in 1914. The books are replete with cases where parents have conveyed property to their children on consideration, in whole or in part, that maintenance be furnished to the parents by the children. Whether, under such conveyance, the grantors may have recourse to the land in event of failure of the grantees to furnish and provide the maintenance and support contemplated by the conveyance, depends upon the intent of the grantor as disclosed by the language of the conveyance itself. It is the rule of law of this jurisdiction that for such maintenance requirements to operate as a lien or charge on the land, the "intent to impose such burden must definitely appear, or be directly inferable from the grant when properly construed." *Grant* v. *Swank et al.*, 74 W. Va. 93. That case involved a recited obligation on the part of the grantees to care for and support the grantors with money and necessaries. There was no requirement that the support be furnished on the land nor was such maintenance made a lien or charge upon the land. It was held that the land was not subject to the charge. In the case at bar is the requirement of the deed, "said maintenance to be on the land," sufficient to differentiate this case from the case cited, and which is relied on by the appellees herein as being in support of their contention? Courts of equity have been and ought to be liberal in the construction of such provisions.

There is no place for strict construction in situations like this. If the language of such deed will at all sustain the construction that a charge or lien on the land was intended by the owner, equity will adopt that construction. A multitude of cases and texts sustain the proposition that courts of equity will fully rescind conveyances by parents to their children upon breach of the condition to furnish support. Pomeroy's Equity Jurisprudence, (3rd Ed.) Vol. 6, section 686; Thompson on Real Property, Vol. 3, section 1984; *Glocke* v. *Glocke,* (Wis.) 89 N. W. 118; *Grant* v. *Bell,* (R. I.) 58 Atl. 951; *Wampler* v. *Wampler,* (Va.) 30 Gratt. 454; *Lowman* v. *Crawford,* 99 Va. 688, 40 S. E. 17; *Pownal* v. *Taylor,* 10 Leigh 172, 34 Am. Dec. 725; see also comprehensive note and cases cited, 130 A. S. R. p. 1053. This Court has never hesitated to grant relief in such cases where the intent to charge the land appeared in the deed. *Davis* v. *Cheuvront,* 82 W. Va. 182; *White* v. *Bailey,* 65 W. Va. 573; *McClure* v. *Cook,* 39 W. Va. 579.

Where an aged father, bending under the weight of years and no longer able to husband his land in proper manner, conveys the same to a son for nominal cash consideration and in further consideration that maintenance be furnished by the grantee to his father and mother "on the land", it must be considered that it was the intention of the owner that the land should stand as a guaranty for the assistance that he and his aged helpmate would surely need in the evening of their lives when the long shadows fall, and that if the son should prove faithless to the trust reposed in him, the confiding parents would not find themselves outcasts when they most need shelter and protection. "How sharper than a serpent's tooth it is to have a thankless child." Happily, however, for the aged grantors in this case, they safeguarded the days of their decline against the ingratitude or improvidence of their son by declaring in the deed not only that maintenance should be provided, but that it should be provided "on the land." This deed was recorded and thereby became a proclamation to creditors and purchasers of the son, Tunis, that the primary liability on the land was the maintenance and support of Jonas A. Poling and his wife.

Their rights were first; the rights of creditors of Tunis were second. Jonas and his wife stayed on the land. She died first.

Now, Tunis and Samuel by their aforementioned deeds of May 1, 1925, respectively, reconveyed to Jonas all their right, title and interest in the land. They thereby merely restored him to the position he had been in before he made the deed to Tunis in 1914. The same result was thus attained as though Jonas had obtained a decree in equity cancelling the deed to Tunis because of failure of compliance by the grantee with the maintenance requirement thereof. The creditors of Tunis have no just ground of complaint about this, because the language of the deed itself (Jonas to Tunis) told them that the rights of Jonas were paramount. It was his property and he had full right to place a burden upon it that would be above the rights of all persons claiming against or under his grantee. *McClure* v. *Cook, supra.*

The old man having thus become re-invested with the title May 1, 1925, had full right, on the following day, to make a deed therefor to another son, Herman, the petitioner herein, in consideration of maintenance ''on the land''. Herman therefore became interested in the suit. His petition, setting forth in substance the occurrences above recited as having transpired prior to the filing of his petition and the further allegation that subsequent to the date of the deed to him he furnished maintenance and support to his father on the property to the time of the death of the father, makes a *prima facie* showing of his interest in the subject matter of the suit and the propriety of his being heard in support of his claim. It is therefore our opinion that the demurrer to the petition ought to have been overruled.

We, therefore, reverse the decree of the circuit court, over-rule the demurrer, and remand the cause.

*Reversed and remanded.*