THREE STATES COAL COMPANY *v.* SUPERIOR ELKHORN BY-PRODUCTS COAL COMPANY

(No. 6920)

Submitted April 28, 1931.   Decided May 12, 1931.
(Rehearing denied June 9, 1931.)

*H. L. Ducker* and *Hugh G. Woods*, for plaintiff in error.
*H. F. Porterfield* and *Russell S. Ritz*, for defendant in error.

LIVELY, JUDGE:

This action is trespass on the case in assumpsit. Plaintiff claimed, and sued for, breach of a contract for purchase of coal from defendant, and the jury awarded plaintiff $1,420.83 on which judgment was entered, and this writ of error followed.

The parties will be designated as in the trial court. Plaintiff, Three States Coal Company, is a West Virginia corporation engaged in buying coal on the market and selling at profit, with principal office and place of business at Bluefield, West Virginia. Defendant, Superior Elkhorn By-Products Coal Company, was a West Virginia corporation with principal office at Huntington and place of business at Bevinsville, Kentucky, where it mined coal for sale.

The declaration set out in full the correspondence and telegrams forming the contract of sale and purchase of the coal, and charged breach. Defendant filed a plea in abatement to the jurisdiction of the court, alleging that the contract, set out in the declaration, was a Kentucky contract to be performed in Kentucky and which the declaration charged was breached in Kentucky, and, therefore, the cause of action did not arise in Mercer County, West Virginia. Defendant also pleaded the general issue, and set-off. By stipulation, the issue on the plea in abatement was submitted to the court, on agreed statement of facts. These facts are contained in the correspondence and telegrams which formed the contract and are here set out in full. They are as follows:

"June 11, 1926.

Superior Elkhorn By-Products Coal Company,
Bevinsville, Ky.

Gentlemen:
· Would you be interested in an order for 40,000 tons of Elkhorn Steam Mine Run—net you $1.30 net ton mines shipment from date until November 15th—in approximately equal monthly installments, with the exception of July and August, and during these months 10,000 to 11,000 tons would be required to be shipped? If your position is such that you are not inclined to handle the order for the entire tonnage possibly you would consider the acceptance of 15,000 to 20,000 tons—shipment over the period. Doubtless this or a similar tonnage will be attractive to you, considered in the nature of a back log.

This is for Western shipment. It will not be necessary to guarantee analysis. All our customer wants is a good Elkhorn Steam Coal.

If interested, kindly wire us upon receipt of this letter, stating quantity of tonnage you will accept, and we will telegraph you billing.

Yours very truly,

THREE STATES COAL COMPANY
C. A. Clybourne, President."

· Defendant answered:

"WESTERN UNION TELEGRAM

63HN FN 16    Bevinsville Ky 1042A, June 14, 1926

Three States Coal Co.
  Bluefield W Va

Your letter eleventh will accept order one car daily to November fifteenth Elkhorn Steam Mine Run

SUPERIOR ELKHORN BYPROD COAL Co"

To this telegram plaintiff answered:

"COPY OF WESTERN UNION TELEGRAM

June 14, 26

Superior Elkhorn By-Products Coal Company
    Bevinsville, Kentucky.

Accept your offer one car daily mailing order.

THREE STATES COAL COMPANY"

On that date, plaintiff mailed to defendant the following order:

"THREE STATES COAL COMPANY

Muncie, Indiana, Bluefield, W. Va.   Cincinnati, O.

Bluefield, W. Va.

Order No. 6069.

To Superior Elkhorn By-Product Coal Company,
    Bevinsville, Kentucky.        Date June 14, 1926.
No. Cars effective   Kind Coal   Elkhorn Grade
Straight Mine run.
Immediately one (1) Car daily until November 15th,
1926.
To be shipped, when? Beginning immediately.
Equipment Hopper Bottom' Cars.  Mine price $1.30
per net ton f. o. b. mines.
*Consing* to Three State Coal Company, At Russell
Scales.
3 States Check $507.12
Route C & O                        What Mine You
Shipping notice to Ourselves at Bluefield, W. Va.
Customer's Order No.
Remarks:  Confirming exchange of telegrams be-
tween our respective companies.

Gentlemen:  Coal shipped on our orders and re-
fused by consignee, because of inferior quality, will
be sold by us at best price obtainable.  If for any
reason this order is not in accordance with your un-
derstanding please return promptly.

Very truly yours, ·

THREE STATES COAL COMPANY.

Per E. P. Witt."

Defendant then wrote plaintiff as follows:

"June 21, 1926.

Three States Coal Co.,
    Bluefield, W. Va.

Gentlemen:

We have your order No. 6069 for one car per day of Steam Mine Run Coal to November 15th, and are starting shipments on same today.

We note that the order calls for hopper bottom equipment. We shall inquire if absolutely necessary to conform shipments to hopper bottom cars. As it is impossible to secure such equipment at all times on this branch of the C & O, as is the case today.

The car being shipped today is a drop gondola, and not entirely self clearing.

Yours very truly,

SUPERIOR ELKHORN BY-PRODUCTS COAL CO.
Sec'y-Treas."

Plaintiff answered:

"THREE STATES COAL COMPANY

Bluefield, W. Va. June 22, 1926.

Superior Elkhorn By-Products Coal Company,
    Bevinsville, Kentucky.

Gentlemen:
        Attention Mr. W. W. Lindsey,
            Secretary-Treasurer.
        Yours of June 21st.

We are writing the customer, asking if they will permit the shipment of equipment other than hopper cars and if they reply favorably we will communicate with you.
        Yours of June 21st.

THREE STATES COAL COMPANY

By E. P. Witt."

No further communications passed between the parties respecting hopper cars.

The main assignments of error are: (1) Failure to sus-

tain the plea in abatement; and (2) error in instructions. Logically, the assignment which challenges jurisdiction should be first considered.

Section 1, Chapter 123, Barnes' Code, (Code 1931, 56-1-1), provides: "Any action or other proceeding at law or suit in equity, except where it is otherwise specifically provided, may hereafter be brought in the circuit court of any county: (1) Wherein any of the defendants may reside * * *; or (2) If a corporation be a defendant, wherein its principal office is, or wherein its mayor, president or other chief officer resides; or if its principal office be not in this state, and its mayor or president or other chief officer do not reside therein, wherein it does business." And section 2 of that chapter, (Code 1931, 56-1-2), says: "An action may be brought in any county wherein the cause of action, or any part thereof arose, although none of the defendants reside therein." This action was instituted in Mercer County on the theory that the circuit court had jurisdiction because the action arose in that county—that the contract was made in that county, although breached in Kentucky. Plaintiff argues that the contract sued on is a West Virginia contract; while defendant contends that it is a Kentucky contract made in that state, to be performed there, and if breached at all, was breached in Kentucky.

Where was the contract made? That is the controlling question on the issue raised by the plea.

Generally, a contract is considered as entered into at the place where the offer is accepted, or where the last act necessary to complete it is performed. *Galloway* v. *Ins. Co.*, 45 W. Va. 237. And where an offer is made in one state and accepted by letter or telegram in another state, the acceptance completes the contract, and the place of the contract is where the acceptance of the offer is mailed or telegraphed. *Burton* v. *U. S.*, 202 U. S. 344; Elliott on Contracts, Vol. 2, sec 1116; Williston on Contracts, Vol. 1, sec. 97; 3 Am. & Eng. Ency. Law 856; *Emerson* v. *Proctor*, 96 Me. 360, 54 Atl. 849; *Garrettson* v. *Bank*, 47 Fed. 867. The law in this regard is reasonably well settled. Innumerable recent cases accentuate the rule stated in the authorities above cited. The difficulty

lies in the application of this law to each particular case. A contract, either of purchase and sale, or any other contract is formed when the minds of the parties meet. Letters and telegrams are merely mediums used for the meeting of minds of contracting parties. Without these, or like means of communication, the parties could not contract unless they came together and personally conducted their negotiations to conclusion. Plaintiff was in the market for Elkhorn Steam Mine Run coal and was willing to pay therefor $1.30 net ton at the mines until the 15th of November, 1926, and approached defendant in Kentucky through the medium of the U. S. mails asking the latter if it would be interested in an order for 40,000 tons, or, if not for that tonnage, then 15 or 20 thousand tons over the period, or a similar tonnage considered in the nature of a "back log." The maximum of the amount of tonnage was fixed (40,000 tons) but no minimum. The letter ended with "If interested, kindly wire us upon receipt of this letter, stating quantity of tonnage you will accept, and we will telegraph you billing." Defendant immediately telegraphed, "Your letter eleventh will accept order one car daily to November fifteenth Elkhorn Steam Mine Run." There was no break in the negotiations. The parties might be considered as still together in Kentucky where plaintiff approached defendant and began to bargain. Such would necessarily be the situation if letters and telegrams or like mediums had not been employed. As was said in *Milliken* v. *Pratt*, 125 Mass. 374, 376: "If the contract is completed in another state, it makes no difference in principle whether the citizens of this state goes in person, or sends an agent, or writes a letter across the boundary lines between the two states." Plaintiff's offer was to purchase (order) Elkhorn Steam Mine Run coal at $1.30 per ton mines to be delivered up to November 15th, leaving the amount of tonnage to defendant which it would sell in the nature of a "back log," and asking the tonnage it would sell, upon receipt of which, billing would be telegraphed. Defendant accepted that offer, stating the amount of tonnage at "one car daily to November 15th." The minds of the parties then met and the contract was formed. We do not think this acceptance was a counter offer

or modification or change of the unqualified offer of plaintiff to purchase coal. In plaintiff's reply telegram it treated the telegram of defendant as an "offer." Defendant's intepretation is not controlling. All that remained for plaintiff to do was to wire shipping directions. The coal was sold at the mines. The formal order directed it to be consigned to plaintiff at Russell (Ky.) Scales in hopper cars, and was a mere incident in the performance of the contract, and not an element in the making of its controlling features. *Turner* v. *McCormick,* 56 W. Va. 161. Plaintiff argues that its telegram of June 14th in answer to defendant's telegram of that date was the acceptance of an order, and the last act which completed the contract; and having been delivered to the telegraph company in Mercer County, West Virginia, the contract, so completed, became a West Virginia contract, and the cause of action for its breach arose in Mercer County. As above stated, we think defendant's wire in answer to plaintiff's letter was an unqualified acceptance of plaintiff's offer to buy coal, and therefore the place of the contract was where that acceptance was made. Brief for defendant further takes the position that the contract was not made until the formal order was received in Kentucky, and which order was not in strict accordance with plaintiff's letter of June 11th, in that it directed the coal to be shipped in hopper cars. The argument is that a new offer for coal was contained in that order received at Bevinsville, Kentucky. We do not think this direction to ship in hopper cars was a material variation of the contract already formed. It seems that it had no bearing in the performance of the contract, for coal was shipped in any equipment available. Coal was in demand on a rising market due to the contemplated strike of English mines in England, and which strike was actually called in that year, and cars of various kinds were indiscriminately used in shipping coal to eastern ports.

On the agreed facts, the plea to the court's jurisdiction should have been sustained. It would be improper to consider the other alleged errors in the trial before the jury.

*Judgment reversed; verdict set aside; case dimissed.*