E. B. FOX, *Committee, v.* JOSIE STARBUCK *et al.*

(No. 8396)

Submitted September 30, 1936. Decided October 6, 1936.

*W. C. Haythe* and *J. Raymond Gordon* for appellants.
*Wm. H. Sawyers* and *W. A. Brown,* for appellees.

HATCHER, PRESIDENT:

This suit involves the sanity of a grantor, and the performance of his grantee under a deed conditioned for care, support, etc.

On August 4, 1931, Peter Cales and Amanda, his wife, granted unto Mrs. Josie Starbuck (the daughter of Mrs. Cales by a former husband) all the real estate and personal property of every kind and character then owned by them, in consideration that the grantee "take and care" for them during life, furnish them with anything they might need, and bury them decently at death. The deed recited that the title to the property passed immediately to the grantee, but that the grantors retained its possession with the right to manage it for life. A vendor's lien was reserved to insure faithful performance by the grantee. The grantors then owned jointly a First National Bank of Hinton time certificate deposit of $2330.00, and several tracts of real estate. The certificate was indorsed by the grantors about November 4, 1931, and negotiated by Mrs. Starbuck to the bank. On December 17, 1931, the Mental Hygiene Commission of Summers County found Peter Cales to be "a mental defective, due to his advanced age, and incapable of attending to business." E. B. Fox was appointed his committee, and in 1932, instituted this suit to have the deed to Mrs. Starbuck cancelled, and to recover from her and the bank the certificate or its value. He charged mental incompetency to Peter Cales and failure of consideration to Mrs. Starbuck. Pending the suit, Mrs. Cales died in March, 1933, and Mr. Cales died five months later. His children by a former marriage revived the suit and now prosecute it. The circuit court found against them.

A number of witnesses who are interested in the result of the suit testified as to the mental condition of Mr. Cales. They are disqualified by Code, 57-3-1, and their evidence is not considered. A number of disinterested witnesses narrated eccentric and sometimes foolish conduct by Cales around August 4, 1931 (the date of the deed) and were of opinion that he was then incompetent

to attend to business. About an equal number of disinterested witnesses had not observed such conduct and considered him competent for business at that time. The notary before whom the deed was acknowledged knew him well, and saw nothing out of the ordinary about him on that occasion. A physician who examined Cales on December 3, 1931, "in a general way * * * just as a general practitioner would," found him suffering from senile dementia, and was of opinion that the condition had been developing for some years. Another physician who treated Cales several times for bodily infirmities in 1932-3, but made no mental examination, was of opinion he was "mentally all right."

With such disagreement among the witnesses, we cannot say that the circuit court was plainly wrong in finding that Cales was mentally competent to make the deed of August 4, 1931.

Whether Mrs. Starbuck acquired the certificate of deposit from the Cales as a gift (executed) or otherwise does not appear. But the parties had the unqualified right to modify or change the conditions in the deed affecting the certificate. *Corns-Thomas Engineering Co.* v. *County Court,* 92 W. Va. 368, 381, 115 S. E. 462; *Azure* v. *Hunter,* 101 W. Va. 191, 132 S. E. 726. By indorsing and delivering it to Mrs. Starbuck, the Cales clearly implied their intention to release it from control of the deed and they did thereby confer on her an instant and valid title to the certificate which she could lawfully transfer to the bank. Negotiable Instruments Law, section 30 (Code, 46-3-1) ; 8 C. J., subject Bills and Notes, section 729.

Mrs. Starbuck did not attempt to prove substantial compliance with her obligations under the deed. She took the untenable position that "Mr. Fox (the committee) was to pay their (the Cales') bills—while they had control of everything." Her husband said of groceries for the Cales "We furnished part of them," but what proportion he did not say. Fox testified that he never knew of Mr. Starbuck buying anything. So the

groceries furnished by the latter could not have been considerable. Peter Cales received a monthly pension of $100.00, from which Fox paid out $467.18 on support of, and medical care for, the Cales. Mrs. Starbuck did not deny this payment. She admitted that she had not *taken* the Cales under her personal care, or paid the several persons who did care for them; neither had she paid the balance due on grocery bills against them amounting to $150.00, nor their doctor's bills, nor the taxes on the real estate ($24.05), nor the funeral expenses of either Mrs. Cales ($472.45) or Mr. Cales ($    ). Mrs. Starbuck merely claimed as follows: "There were many many times that I would buy things for them and take them up there. I made it a practice of taking them something that was appetizing, something they liked every time I went up there: *making them presents.* They never called on me day or night unless I went."

From the undisputed evidence and the admissions of Mrs. Starbuck, it is clear that she failed substantially to perform the material conditions of the deed. Accordingly, it will be cancelled. The following cases support the right of plaintiffs to sue (challenged by defendants) as well as our holding herein. *Fluharty* v. *Fluharty,* 54 W. Va. 407, 46 S. E. 199; *White* v. *Bailey,* 65 W. Va. 573, 578, 64 S. E. 1019; *Loar* v. *Poling,* 107 W. Va. 280, 285, 148 S. E. 114, 64 A. L. R. 1246.

Counsel for Mrs. Starbuck assert that the money paid by the committee for support of the Cales was "by the terms of the deed itself Josie Starbuck's money." This assertion is clearly erroneous for the deed conveyed only such property as the Cales owned on August 4, 1931. "Now owned" is the limitation in the deed. The money which came into the hands of the committee was money' accruing to Mr. Cales subsequent to the deed and is not subject to it.

Counsel raise some legal questions, which were not determined in the decree of the circuit court. Consequently, we remand the cause for further adjudication in that court, if counsel so desire.

*Reversed and remanded.*