## APPLICATION OF MACH

MACH, Appellant, v. MACH, Respondent

(25 N. W.2d 881)

(File No. 8564. Opinion filed January 31, 1947.)

**Lars A. Bruce**, of Yankton, for appellant.

**F. M. Scoblic,** of Tyndall, and **W. W. French,** of Yankton, for respondent.

RUDOLPH, J. Joseph Mach was the owner of a certain quarter section of land in Yankton County upon which he and his family resided. On November 11, 1901 Joseph conveyed this land to his wife, the deed reciting: "This deed

is made upon condition that a contract of even date herewith is fully and faithfully performed." The contract is as follows:

"Agreement

'This Agreement made and entered into this 11th day of November, A. D. 1901, by and between Julia Mach, party of the first part and Joseph Mach, party of the second part, both of the County of Yankton, State of South Dakota, Witnesseth:

"That whereas, Joseph Mach, the party of the second part has this day executed a deed of the Southeast Quarter of Section 8, in Township 94 of Range 57 in Yankton County, South Dakota to the said Julia Mach, party of the first part.

"Now, therefore, this Agreement witnesseth: That said deed is executed and delivered to the said Julia Mach upon the express condition, that she performs all of the conditions of this contract which are as follows, to-wit: Said Joseph Mach shall have the right to remain upon the place as he has done heretofore, and make said place his home, and shall receive therefrom his support as he has done heretofore; that said place shall be worked as heretofore, and if the said Joseph Mach does so remain he shall do such work as he is able to do, the same as he has done heretofore; it being understood however that the said Julia Mach shall treat him kindly and with consideration and nurse him in sickness as may be necessary and he to receive food and clothes as he has done heretofore as long as she remains on the premises.

"It is further understood that the right of the said Joseph Mach to the privileges of this contract is dependent upon the said Joseph Mach conducting himself properly towards her, the said Julia Mach, and otherwise conducting himself as a husband ought to do his wife. It is further agreed that after paying all expenses of running the farm and household expenses, and other necessary expenses of the family that all of the earnings of the farm and the proceeds of all personal property shall be equally divided between Charles J. Mach and Julia Mach. It is further agreed that the said Joseph Mach has and by these presents does assign and set over to the said Julia Mach all the personal

property of whatever nature and description now owned by him and kept upon said premises, the same to be used by her in accordance with this agreement.

"In witness whereof, the said parties hereto have hereunder set their names and seals the 11th day of November, 1901."

There are four Mach children, Adolph, Charles, Edward and Rose. The Machs and their children continued to reside upon the premises after the execution of the deed and contract. Charles and Edward left home about 1908, and returned only after the death of their father and mother. Rose left home about the time the contract was made and visited her parents only occassionally. Adolph remained in the vicinity of the home, and from 1918 to 1920 rented and farmed the land. Julia Mach died in 1924, and thereafter Joseph continued to reside in the buildings on the premises and receive the rents and profits therefrom. Joseph died April 25, 1938. About two years before the death of Joseph, Adolph found his father on the premises suffering from a paralitic stroke as a result of which he was helpless. Adolph took his father to his, Adolph's, home and there cared for him and furnished him lodging, food, clothing, medical and hospital care. Adolph wrote to his brothers and sister soliciting financial aid in caring for the father, but received nothing. Not only was the father a helpless invalid and bedridden but due to a running sore and lack of control of the bowels the care was constant and arduous.

Based upon facts substantially as above set out the trial court determined that Joseph had an equitable lien upon the real estate and upon the income therefrom to enforce the performance of the contract above set out. The court further determined that Adolph who furnished the support and care of his father during the two years preceding his father's death is subrogated to all the rights of the father and has an equitable lien upon the real estate and the income therefrom for the reasonable value of such support and care. The trial judge determined the reasonable value of the care and support furnished by Adolph, from this

value he deducted the income from the farm which had been paid to Adolph, and awarded Adolph a judgment for the balance which was made a lien upon the real estate. Charles Mach has appealed.

■ Contracts of the general type and character of the contract with which we are here concerned have been before this court on several occasions. Hegge et al. v. Hegge et al., 44 S. D. 555, 184 N. W. 800; Peters v. Peters et al., 62 S. D. 563, 255 N. W. 466; Aisenbrey v. Hensley, 29 S. D. 70, 17 N. W.2d 267. In the Peters case it was said [62 S. D. 563, 255 N. W. 467]:

"While it is true as applied to an ordinary conveyance that the failure by a grantee to perform a promise will not give rise to a lien or charge against the land in the absence of an express reservation or promise to that effect, we do not regard the omission of such a clause in a contract of the kind under consideration as fatal. Courts take cognizance of the peculiar character of. these transactions involving the element of confidence and other considerations, and as we have indicated do not deny relief by reason of the general principle applicable to ordinary conveyances."

The cited cases clearly sustain the trial court in determining that there exists an equitable lien against the land in favor of the grantor to secure the support which is the object and purpose of the contract, but it should also be pointed out that this contract specifically provides that the grantor "shall receive therefrom his support." This language contemplates that the support of the grantor should come from the land and expresses an intention that the land should stand as a guarantee for such support. Loar et al. v. Poling et al., 107 W. Va. 280, 148 S. E. 114, 64 A. L. R. 1246.

The contract provides that the grantor "shall have the right to remain upon place as he has done heretofore, and make said place his home, and shall receive therefrom his support.". This right is not limited to the life of Julia Mach. The contract does provide for some personal service to be rendered by Julia to Joseph, but reading the contract as a whole we are convinced that the right of Joseph to receive

his support from the land was not conditioned upon the life of Julia or only for the time that Julia could furnish such personal service as she had agreed to furnish.

 Subrogation has been defined by this court as the mode which equity adopts to compel the ultimate discharge of the debt by him who, in good conscience, ought to pay it, and to relieve him whom none but the creditor could ask to pay. The right is not dependent upon an agreement, but rests upon principles of natural justice and equity. In re Petersen's Estate (Cheney et al. v. Blake et al.), 67 S. D. 540, 295 N. W. 494. As now applied, subrogation is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter. 50 Am. Jur. Subrogation § 7. Adolph was not a mere volunteer, but was acting under compulsion recognized by equity as a basis of the right of subrogation. Henry v. Knight, 74 Ind. App. 562, 122 N. E. 675. We are of the opinion that under the facts presented natural justice and equity require a holding that Adolph was subrogated to the rights of his father for the support of the father furnished by Adolph.

 Appellant contends that under the provisions of SDC 14.0312 it was the duty of Adolph to support his father and that he is not now entitled to be reimbursed for such support. This section of our Code makes the status of the parent as a "poor person" a condition to the duty to support. Joseph, being entitled to his support from the land, was not a "poor person" within the meaning of the statute.

We have considered the record with respect to the amounts received from the farm and paid out by Adolph, and find the evidence ample to support the conclusions of the trial court.

The judgment appealed from is affirmed.

All the Judges concur.

POLLEY, J., not sitting.