State *ex rel.* Coral Pools, Inc.

*v.*

Dennis R. Knapp, Judge, *etc., et al.*

(No. 12216)

Submitted April 23, 1963.         Decided May 21, 1963.

*Kay, Casto & Chaney, John S. Haight, John E. Davis,* for relator.

*Steptoe & Johnson, Charles W. Yeager,* for respondents.

CALHOUN, JUDGE:

In this original proceeding in prohibition, the petitioner, Coral Pools, Inc., a corporation authorized and existing under the laws of the State of Ohio, seeks to prohibit the respondents, Honorable Dennis R. Knapp, Judge of the Common Pleas Court of Kanawha County, and C. R. Kennedy, from proceeding to trial in a certain civil action pending in that court in which C. R. Kennedy is the plaintiff and Coral Pools, Inc., is a defendant. The prohibition proceeding is based on the claim of Coral Pools, Inc., that it is not subject to the personal jurisdiction of the trial court in the civil action.

The summons and a copy of the complaint in the civil action were served upon Coral Pools, Inc., by delivery thereof to Honorable Denzil L. Gainer, Auditor of the State of West Virginia, pursuant to the provisions of Code, 1931,

31-1-71, as amended, a portion of which statute in its present form is as follows:

"Any foreign corporation which shall do any business in this State without having been authorized so to do pursuant to the provisions of section seventy-nine of this article shall be conclusively presumed to have appointed the auditor of the State as its attorney in fact with authority to accept service of notice and process on behalf of and upon whom service of notice and process may be made in this State for and upon every such corporation in any action or proceeding described in the next following paragraph of this section. No act of such corporation appointing the auditor such attorney in fact shall be necessary. * * *

*   *   *

"For the purposes of this section, a foreign corporation not authorized to do business in this State pursuant to the provisions of section seventy-nine of this article shall nevertheless be deemed to be doing business herein if such corporation makes a contract to be performed, in whole or in part, by any party thereto, in this State, or if such corporation commits a tort in whole or in part in this State. The making of such contract or the committing of such tort shall be deemed to be the agreement of such corporation that any notice or process served upon, or accepted by, the auditor pursuant to the next preceding paragraph of this section in any action or proceeding against such corporation arising from, or growing out of, such contract or such tort shall be of the same legal force and validity as process duly served on such corporation in this State."

The contract in question clearly falls within the statutory language, "a contract to be performed, in whole or in part, by any party thereto, in this State, * * *." The basic question presented for decision, therefore, is whether *in personam* jurisdiction of Coral Pools, Inc., obtained in the circumstances of this case, would be consonant with the constitutional requirements of due process of law.

Coral Pools, Inc., with offices in Columbus, Ohio, is engaged in the business of manufacturing kits for the con-

struction of swimming pools. C. R. Kennedy is engaged in a general contracting and home building business in and near Charleston, West Virginia. On September 8, 1961, Coral Pools, Inc., and C. R. Kennedy entered into a written contract whereby the latter became a "dealer" for "promoting, installing and selling" such swimming pool kits in an area within a forty-mile radius of Charleston. Subsequently the same parties entered into an oral contract relating to the use of one of such kits in the construction of a swimming pool on Kennedy's dwelling property at Charleston.

It is undisputed that Coral Pools, Inc., has never qualified to do business within the State of West Virginia and that none of its officers or agents came within this state in connection with the making or execution of the written contract or the oral contract. It appears without dispute also that the written contract was executed at Columbus, Ohio, by the appearance of Kennedy in person at that place and that the oral contract pertaining to the construction of a swimming pool on Kennedy's home property at Charleston was negotiated and made by a telephone conversation between Kennedy at Charleston, West Virginia, and a representative of Coral Pools, Inc., at Columbus, Ohio. Kennedy's position is stated in the respondents' answer as follows: "* * * petitioner entered into contracts to be performed in whole or in part in this state and under the terms and provisions of Chapter 31, Article 1, Section 71 of the 1931 Code of West Virginia, as amended, the petitioner was doing business within the state and subject to the jurisdiction of the courts herein."

On or about August 15, 1961, Ronald Breeding, a representative of Coral Pools, Inc., from Columbus, Ohio, called C. R. Kennedy by telephone at Charleston, West Virginia, to inquire whether Kennedy would be interested in a contract for installation of swimming pool kits to be sold in the Charleston area by agents or salesmen for Coral Pools, Inc. Kennedy expressed an interest in the proposal and also in becoming a local dealer. Immediately thereafter Breeding sent to Kennedy by mail a detailed set of plans for installa-

tion of such swimming pools and a letter requesting an estimate of the cost of installation in the Charleston area. Kennedy submitted by mail an estimate of such cost. On August 24, 1961, Breeding again called Kennedy by telephone, advised him that his cost estimate appeared to be reasonable and arranged for Kennedy to appear in person at the offices of Coral Pools, Inc., at Columbus, Ohio, for a further discussion of the subject. At the consequent conference, tentative arrangements were made for Kennedy to be made a dealer but it was necessary first to obtain the approval of Robert C. Onderdonk, another agent and representative of Coral Pools, Inc. Such approval was obtained and arrangement was subsequently made by telephone for another appearance of Kennedy at Columbus for a conference with Onderdonk for the purpose of making a contract for the proposed dealership. A written agreement was consequently executed at Columbus, Ohio, on September 8, 1961. In connection with the execution of the written dealership contract, Kennedy made a deposit of $500, "as a show of good faith", to be applied toward payment for the first pool kit thereafter ordered by him at the regular dealer's price.

On September 19, 1961, Onderdonk, from Columbus, called Kennedy at Charleston by telephone to advise him that the corporation's advertising department was interested in having Kennedy install a display or demonstration pool on his property at Charleston. In the same telephone conversation, Kennedy accepted the offer or proposal thus made to him. In preparation for installation of the pool, Kennedy cut down a number of trees in the lawn adjacent to his dwelling and made therein an excavation approximately forty feet long and twenty feet wide with a depth of approximately three feet at one end and six feet at the other.

On October 3, 1961, Kennedy called Onderdonk by telephone to advise him that he was ready for the pool kit to be shipped and installed. At that point it developed that there was a misunderstanding between Onderdonk and Kennedy concerning the oral contract pertaining to the proposed installation of the pool on Kennedy's property. It was Onderdonk's understanding and recollection of the agree-

ment that Kennedy would pay for the pool kit and that the corporation's advertising department would absorb the cost of the mere installation of the pool on Kennedy's property by allowing him a credit of ten per cent on each of the next ten pool kits ordered by him pursuant to the written dealer agreement. On the other hand, it was Kennedy's understanding and recollection of the agreement that he would permit the pool when installed on his property to be shown to prospective purchasers by salesmen for the corporation for a period of two years; and that the pool kit was to be furnished free of cost to him. Apparently there was an additional misunderstanding concerning payment for the cost of installation.

As a consequence of the misunderstanding concerning the terms of the agreement pertaining to the sale and installation of the pool, the pool kit was not shipped to Kennedy by the corporation. In these circumstances Kennedy instituted the civil action in which he asserted a claim of $9,500 in damages resulting to him by the alleged failure of Coral Pools, Inc., to abide by and perform its contractual obligations.

Coral Pools, Inc., appearing specially in the trial court for the purpose, made a motion in writing to dismiss the action, or in lieu thereof to quash the return of service, on the ground that it is an Ohio corporation not qualified to do business in West Virginia; and that therefore it is not subject to the jurisdiction of the trial court because it has never done business in this state within the meaning of the statute. This motion was overruled by the trial court and the case was placed in readiness for trial. Thereafter this original proceeding in prohibition was instituted in this Court. Coral Pools, Inc., has made no appearance to the civil action in the trial court except its special appearance as stated above.

In connection with the motion in the trial court, proof was submitted in the form of the testimony of C. R. Kennedy; affidavits of Onderdonk, Breeding and the secretary-treasurer of Coral Pools, Inc.; and a stipulation that, if certain named persons were to appear as witnesses, their testimony would corroborate that given by C. R. Kennedy. This same

proof has been submitted to this Court. The facts previously stated herein are without substantial dispute or controversy.

Kennedy testified that his agreement with Onderdonk was that salesmen for the corporation would make the actual sales of pool kits in this state and that Kennedy would not actually make sales but that he would have the right to approve sales contracts made by the salesmen and the duty to make installations. Apparently Kennedy contends that such was a part of the parol contract made by telephone.

In relation to the parol contract made by telephone, Kennedy testified that Onderdonk agreed that the corporation's engineer would be sent to Charleston to supervise the installation of the pool on his property. There is no specific denial of this portion of Kennedy's testimony.

The written contract refers to Kennedy as a "dealer". It provides that the parties "further expressly understand and agree that the relationship between them shall be that the dealer is an independent contractor." The contract provided for a warranty as follows: "All pool liners sold to dealer under this agreement shall carry a five year warranty, one year unconditional and four years pro-rated." The dealer was given "the right to purchase, install, promote and sell Coral swimming pools" within the area covered by the contract. The writing further provides that the dealer "shall establish retail prices for Coral Pools" and that he may sell at retail in the area "at the retail prices established by him." It contains the following additional provision: "Coral Pools, Inc. agrees to forward to dealer any and all inquiries received by it from prospective customers within the aforementioned area(s) and the dealer agrees to contact all persons making such inquiries so forwarded to it. It is expressly understood and agreed that any ideas, aids, or suggestions offered by Coral Pools, Inc. shall not be construed, intended or used to direct the business or activities of the dealer or to change or modify the terms of this agreement." In relation to delivery of pool kits to Kennedy the written contract provides: "Coral Pools, Inc. agrees to use its best efforts to make delivery of its products ordered by dealer in accordance with its most recent published delivery schedules,

* * *." Another provision of the written dealership contract is as follows: "All of the rights, duties and obligations of Coral Pools, Inc. and dealer shall be as set forth in this agreement and it is agreed that this written agreement contains the entire and complete agreement * * *." The concluding sentence of the writing is as follows: "This agreement shall be construed and enforced in accordance with the laws of the State of Ohio." The written contract is not specific or detailed concerning the manner of making of sales in West Virginia. It makes no reference to a deposit of $500 or any other sum by Kennedy.

"An unambiguous written agreement entered into as a result of verbal negotiations will, in the absence of a showing of fraud or mistake, be conclusively presumed to represent the final agreement of the parties thereto, and parol evidence may not be admitted to prove that the agreement of the parties was different from that expressed in such writing." *Wyckoff* v. *Painter,* 145 W. Va. 310, pt. 2 syl., 115 S. E. 2d 80. Notwithstanding that fundamental legal principle, however, a prior written contract may be modified or supplemented by a subsequent valid oral contract. *Wyckoff* v. *Painter,* 145 W. Va. 310, 315, 115 S. E. 2d 80; *Fox* v. *Starbuck,* 117 W. Va. 736, pt. 1 syl., 188 S. E. 116; *Corns-Thomas Engineering & Construction Co.* v. *County Court of McDowell County,* 92 W. Va. 368, 381, 115 S. E. 462, 467; *Simpson* v. *Mann,* 71 W. Va. 516, 76 S. E. 895; *Shepherd* v. *Wysong,* 3 W. Va. 46, pt. 2 syl. The subsequent oral contract must, of course, be based upon a valuable consideration. *Bischoff* v. *Francesa,* 133 W. Va. 474, pt. 5 syl., 56 S. E. 2d 865; *Jones* v. *Kessler,* 98 W. Va. 1, pt. 2 syl., 126 S. E. 344; *Brown* v. *Western Maryland Ry. Co.,* 92 W. Va. 111, pt. 5 syl., 114 S. E. 457. See also *Wade* v. *Mutual Benefit Health & Accident Ass'n,* 115 W. Va. 694, pt. 4 syl., 177 S. E. 611; *Charleston Lumber Co.* v. *Friedman,* 64 W. Va. 151, pt. 3 syl., 61 S. E. 815. "The burden of proving an oral modification of a written contract is on the party seeking to establish such modification, and such party must demonstrate by clear and positive evidence that the minds of the parties definitely met on the alteration." *Bischoff* v. *Francesa,* 133 W. Va. 474, pt. 4 syl., 56 S. E. 2d 865.

The parol agreement entered into by telephone in relation to installation of a display or demonstration pool on Kennedy's property in Charleston is a new, supplemental and independent contract relating to a subject matter not covered by the written contract. Both parties agree that Coral Pools, Inc., contracted orally to furnish Kennedy a pool kit for the purpose of installing a pool on his property. The disagreement relates primarily to the question whether Kennedy was to pay for the pool kit or whether it was to be furnished to him free of charge. While the parol contract is a new and independent one, it supplements the written contract and obviously was made to facilitate the performance of contractual obligations created by the written contract. In that respect the two are related.

Inasmuch as the oral contract relating to the construction of the pool on Kennedy's property was to be performed in this state and resulted from an offer made by Onderdonk by telephone from Columbus, Ohio, to Kennedy in Charleston, West Virginia, and an acceptance by Kennedy during the course of the same telephone conversation, that contract must be deemed to have been made in this state. *Three States Coal Co.* v. *Superior Elkhorn By-Products Coal Co.,* 110 W. Va. 455, 158 S. E. 661; *Galloway* v. *Standard Fire Insurance Co.,* 45 W. Va. 237, pt. 2 syl., 31 S. E. 969; *Linn* v. *Employers Reinsurance Corporation,* 392 Pa. 58, 139 A. 2d 638; 4 M. J., Conflict of Laws, Section 20, page 53; 11 Am. Jur., Conflict of Laws, Section 114, page 396.

The constitutionality of the statute itself has not been challenged by the petitioner; nor has it been questioned that this proceeding in prohibition is a proper one by which to determine whether the trial court is undertaking to proceed without having jurisdiction to do so. Code, 53-1-1.

The statute provides: *"For the purpose of this section,* a foreign corporation not authorized to do business in this State * * * shall nevertheless be deemed to be doing business herein" under the circumstances enumerated in the statute. (Italics supplied.) We are not concerned in this case, therefore, with a determination whether Coral Pools, Inc., was "doing business" in this state for any other purpose.

Historically the jurisdiction of courts to render personal judgments has been grounded on their power over the defendant's person. Hence his presence within the territorial jurisdiction of the court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer* v. *Neff*, 95 U. S. 714, 24 L. ed. 565. By a process of gradual development, the concepts relating to "presence", "consent" and "doing business" have been relaxed. *McGee* v. *International Life Insurance Co.*, 355 U. S. 220, 78 S. Ct. 199, 2 L. ed. 2d 223; Anno. 94 L. ed. 1167 at 1179-81. In that process perhaps the most significant milestone is. *International Shoe Co.* v. *State of Washington*, 326 U. S. 310, 66 S. Ct. 154, 90 L. ed. 95, 161 A.L.R. 1057, decided in 1945. The evolution and development of these legal concepts and principles were carefully and thoroughly reviewed in an opinion by Judge Haymond in *Gavenda Brothers, Inc.* v. *Elkins Limestone Company, Inc.*, 145 W. Va. 732, 116 S. E. 2d 910, which involved the constitutional validity of a judgment rendered by a court in Illinois upon a contract made in that state by an authorized representative of a West Virginia corporation. In that case this Court considered the *International Shoe Company* case and subsequent decisions by the same court, and referred to the "constantly increasing trend" to expand the personal jurisdiction of courts in this respect. This Court held in the second point of the syllabus that the requirements of due process are met when a defendant served with process "has had contacts with the state of the forum which make it reasonable that he be required to defend the particular action brought against him in that state," and stated in the body of the opinion: "The requirement that a defendant be accorded due process of law imposes two separate restraints with respect to the exercise of such jurisdiction. It must appear that the defendant over whom jurisdiction is asserted had minimum contact within the state which renders it consistent with traditional notions of fair play and substantial justice that he be compelled to defend himself in that state; and, assuming the existence of such requisite minimum contact, there must be a method of service which is designed to give the defendant actual and reasonable notice of the pending action against him."

Since the decision of the *International Shoe Company* case in 1945, there have been innumerable decisions by federal and state courts dealing with the question here presented.

In *Travelers Health Ass'n* v. *Commonwealth of Virginia,* 339 U. S. 643, 70 S. Ct. 927, 94 L. ed. 1154, decided in 1950, affirming 188 Va. 877, 51 S. E. 2d 263, involving a foreign corporation selling health insurance by mail to residents of Virginia, the court stated: "Moreover, if Virginia is without power to require this Association to accept service of process on the Secretary of the Commonwealth, the only forum for injured certificate holders might be Nebraska. Health benefit claims are seldom so large that Virginia policy holders could afford the expense and trouble of a Nebraska lawsuit. In addition, suits on alleged losses can be more conveniently tried in Virginia where witnesses would most likely live and where claims for losses would presumably be investigated. Such factors have been given great weight in applying the doctrine of *forum non conveniens.*" Accordingly the court held that subjection of the defendant to jurisdiction of the Virginia Corporation Commission was "consistent with 'fair play and substantial justice,' " and "not offensive to the Due Process Clause."

In *Perkins* v. *Benguet Consolidated Mining Co.,* 342 U. S. 437, 72 S. Ct. 413, 96 L. ed. 485, decided in 1952, involving jurisdiction of an Ohio court over a cause of action which did not arise in Ohio and which did not relate to the defendant corporation's activities in that state, the court stated: "The amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case." In taking an additional step in the evolving legal principles now under consideration, the court stated: "The instant case takes us one step further to a proceeding *in personam* to enforce a cause of action not arising out of the corporation's activities in the state of the forum. Using the tests mentioned above, we find no requirement of federal due process that either *prohibits* Ohio from opening its

courts to the cause of action here presented or *compels* Ohio to do so. This conforms to the realistic reasoning in *International Shoe Co.* v. *Washington * * *."

*McGee* v. *International Life Insurance Co.*, 355 U. S. 220, 78 S. Ct. 199, 2 L. ed. 2d 223, decided in 1957, involved a life insurance contract accepted by mail from a nonresident insurance corporation by a person residing in California. Premiums were paid by mail. The corporation had never had an officer or agent in California. There was no showing that it had ever solicited or done any insurance business in that state apart from the policy in question. Judgment on the policy in favor of the beneficiary was rendered in a California court. In upholding the validity of the judgment, the court, in relation to the California statute providing for jurisdiction, stated: "The statute was remedial, in the purest sense of that term, and neither enlarged nor impaired respondents' substantive rights or obligations under the contract. It did nothing more than to provide petitioner with a California forum to enforce whatever substantive rights she might have against respondent." A portion of the reasoning in the opinion upon which the decision is based is as follows:

> "Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a state where he engages in economic activity.

> "Turning to this case we think it apparent that the Due Process Clause did not preclude the California court from entering a judgment binding on respondent. It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. Cf. *Hess* v.

*Pawloski,* 274 U. S. 352; *Henry L. Doherty & Co.* v. *Goodman,* 294 U. S. 623; *Pennoyer* v. *Neff,* 95 U. S. 714, 735. The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof. Often the crucial witnesses—as here on the company's defense of suicide—will be found in the insured's locality. Of course there may be inconvenience to the insurer if it is held amenable to suit in California where it had this contract but certainly nothing which amounts to a denial of due process. Cf. *Travelers Health Assn.* v. *Virginia ex rel State Corporation Comm'n,* 339 U. S. 643. There is no contention that respondent did not have adequate notice of the suit or sufficient time to prepare its defenses and appear."

In *Hanson* v. *Denckla,* 357 U. S. 235, 78 S. Ct. 1228, 2 L. ed. 2d 1283, decided in 1958, the court reaffirmed the pertinent principles enunciated in its prior decisions which have been referred to above, but observed that the case involved the validity of a contract which afforded no basis of "minimal contacts" within Florida, the forum state; and that "the record discloses no solicitation of business in that state either in person or by mail." In these circumstances the court held that a judgment obtained in Florida was invalid and hence not entitled to full faith and credit in Delaware. The court summarized the effect of its prior decisions as follows:

"* * * In *McGee* the Court noted the trend of expanding personal jurisdiction over nonresidents. As technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase. At the same time, progress in communications and

transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of *Pennoyer* v. *Neff*, 95 U. S. 714, to the flexible standard of *International Shoe Co.* v. *Washington*, 326 U. S. 310. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See *Vanderbilt* v. *Vanderbilt*, 354 U. S. 416, 418. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the *'minimal contacts'* with that State that are a prerequisite to its exercise of power over him. See *International Shoe Co.* v. *Washington*, 326 U. S. 310, 319.

\* \* \*

"The cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State. In that respect, it differs from *McGee* v. *International Life Ins. Co.*, 355 U. S. 220, and the cases there cited. In *McGee*, the nonresident defendant solicited a reinsurance agreement with a resident of California. The offer was accepted in that State, and the insurance premiums were mailed from there until the insured's death. Noting the interest California has in providing effective redress for its residents when nonresident insurers refuse to pay claims on insurance they have solicited in that State, the Court upheld jurisdiction because the suit 'was based on a contract which had substantial connection with that State.' In contrast, this action involves the validity of an agreement that was entered without any connection with the forum State. The agreement was executed in Delaware by a trust company incorporated in that State and a settlor domiciled in Pennsylvania. The first relationship Florida had to the agreement was years later when the settlor became domiciled there, and the trustee remitted the trust income to her in that State." (Italics supplied.)

The following additional cases are here referred to because of pertinency of principles therein adjudicated and

also because of the helpful reasoning and review of precedents contained in the several opinions: *Beck* v. *Spindler,* 256 Minn. 543, 99 N. W. 2d 670; *Schilling* v. *Roux Distributing Co.,* 240 Minn. 71, 59 N. W. 2d 907; *Atkins* v. *Jones & Laughlin Steel Corporation,* 258 Minn. 571, 104 N. W. 2d 888; *Compania De Astral* v. *Boston Metals Co.,* 205 Md. 237, 107 A. 2d 357, 108 A. 2d 372, 49 A.L.R. 2d 646, certiorari denied 348 U. S. 943, 75 S. Ct. 365, 99 L. ed. 738; *Jahn & Son* v. *The Superior Court,* 49 Cal. 2d 855, 323 P. 2d 437.

From precedents previously referred to herein, certain guiding principles have become crystalized. A trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations. The amount and kind of activities which must be carried on by a foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the personal jurisdiction of a court in that state must be determined according to the facts and circumstances of each case. It must appear that the defendant corporation over which jurisdiction is asserted had minimum contacts with the state of such nature and extent as to render it consistent with traditional notions of fair play and substantial justice that it be compelled to defend itself in that state. In determining the question, it is proper to consider in which state the case may be more conveniently tried, considering where necessary witnesses most likely live and where the claim of loss or damage presumably would be investigated. It is not essential to the personal jurisdiction of courts in the state of the forum that the foreign corporation own property or have offices in that state or that the corporation's agents were physically present within that state. Jurisdiction may under proper circumstances emanate from a single contract. It is sufficient for purposes of due process that a suit or action be "based on a contract which had substantial connection with" the state of the forum. In case of a suit or an action based upon a relatively small claim, it is proper to consider the disproportionate cost which would be involved in suing in the foreign state, distant from the place where the damage resulted and from the place of residence of the injured party's witnesses. It is proper to consider that the case arose from an act done

or transaction consummated in the forum state. It is proper also, in a case based on contract, to consider that the offer was accepted in the forum state and, consequently, that the contract must be deemed to have been made or consummated in that state.

In the circumstances of this case, and in the light of precedents previously referred to herein, the Court is of the opinion and therefore holds that subjection of Coral Pools, Inc., to the jurisdiction of the Common Pleas Court of Kanawha County in the civil action pending therein is consistent with the traditional notions of fair play and substantial justice and not offensive to constitutional requirements of due process of law; and the writ of prohibition prayed for is denied.

*Writ denied.*