# CHARLESTON.

NEILL *et al. v.* ROGERS BRO'S PRODUCE CO.

(First Nat'l. Bank of Santa Barbara, Intervener.)

Submitted June 8, 1893.- -Decided November 15, 1893.

NEW TRIAL—REMARKS OF JUDGE.

Where the trial-Judge during the progress of the trial in overruling objections to the admission of testimony expresses an opinion as to the material facts in issue in the presence and hearing of the jury so prejudicial, that the error can not be cured otherwise than by granting the party injured thereby a new trial, in case the verdict is against him, notwithstanding such opinion was not objected to at the time it was so expressed, it may be taken advantage of on the hearing of a motion for a new trial and if the motion is overruled, and proper exceptions taken, the judgment will be reversed, and a new trial awarded for such error alone.

WHITE & ALLEN for plaintiff in error cited 9 Leigh 18 ; 12 Leigh 147, 159-163 ; 2 Gratt. 238, 240 ; 87 Pa. St. 525 ; 92 Pa. St. 57 ; Schow. Bail. & Carr. §§ 173, 189, 190 ; 87 Ill 296 ; 124 Mass. 311 ; 57 N. Y. 34 ; 71 N. Y. 353 ; 91 U. S. 618 ; Morse Bank. § 569 ; 17 Kan. 532 ; 76 Ind. 223 ; 9 W. Va. 373, 374 ; Syll. 12, 382, 383, 385, 387 ; 2 Gratt. 333 ; 11 Gratt. 378, 382, 383, 401–407.

HENRY M. RUSSELL for defendant in error cited 19 Gratt. 383 ; 24 W. Va. 752 ; 28 W. Va. 349 ; 87 Cal. 569 ; 38 Kan. 433 ; 71 Ia. 425 ; 85 G. 626 ; 51 Cal. 64 ; 32 N. J. Eq. 467 ; 111 U. S. 125 ; 30 Kan. 412 ; 93 U. S. 92 ; 105 Pa. St. 496 ; 83 N. Y. 287 ; 132 Mass. 103 ; 2 Leigh 493 ; 5 Wal. 663 ; 3 How. 515 ; 9 Wheat. 581 ; 11 Wheat. 431 ; Newm. Bank Dep. § 117 ; Jones Chat. Mort. § 5.

DENT, JUDGE :

On the 20th day of November, 1890, the First National Bank of Santa Barbara, in the Circuit Court of Ohio county, filed its petition claiming a certain car-load of prunes, attached in the suit of Neill & Ellingham against

The Rogers Bros. Produce Company, by virtue of an assignment to it made by the latter company of the draft drawn for the price of the prunes and the bill of lading. The firm of Neill and Ellingham contested this claim, insisting that the claimant did not purchase the draft but only took it for collection, and after notice of dishonor had sufficient funds of The Rogers Bros. Produce Company to satisfy the draft, and that this claim was only made to aid the said produce company to defeat the attachment proceedings.

To try this claim a jury was sworn, the evidence was heard, and a verdict was found for the defendant in error. The plaintiff in error then moved the court to set aside the verdict, and award a new trial, for three alleged errors: (1) Because of a certain improper remark made by the court during the progress of the trial to the counsel in the presence of the jury, which remark so made was not objected to until after the verdict of the jury; (2) because of the admission of improper testimony; and (3) because the verdict was contrary to law and evidence. The court overruled the motion, and gave judgment against claimant, who filed a bill of exceptions, and obtained a writ of error to this Court, and here relies on the same assignment of errors as in the Circuit Court.

Concerning the first assignment, the bill of exceptions uses the following language, to wit: "After the depositions aforesaid of A. L. Lincoln and others, and the said answers of the petitioner to the said bill of discovery and interrogatories, which answers were sworn to by the same A. L. Lincoln, had both been read to the jury as aforesaid, the plaintiffs propounded to said G. W. Eckhart, their said witness, at the point where that question appears in the testimony, the following question: 'Mr Eckhart not confining yourself to your own bank but speaking about banks generally, what would be the custom in a case where the draft was taken as a cash item, sent on for collection, and presented to the drawee, and was returned unpaid, and was taken back to the drawer, and he refused to give a check for it, but had then deposited to his credit in the bank a sufficient amount to pay the debt?'—to which question the

petitioner objected. During the argument of said objection, counsel for plaintiffs insisted that the said deposition of A. L. Lincoln, and said answer to the bill of discovery, which was sworn to by the same A. L. Lincoln, were contradictory, and counsel for the petitioner insisted that they were not contradictory; and the court in the presence and hearing of the jury, during the progress of the discussion, made to counsel the following remark: "They are clearly contradictory;" and when the argument of the objection was concluded, overruled said objection. To the making of said remark by the court the petitioner, neither at the time nor afterwards before the verdict was rendered, objected nor excepted; and no instructions having been asked or given for either party, and the jury having returned a verdict for the plaintiffs, as shown by the record, the petitioner, immediately upon the return of the said verdict, moved the court to set the same aside and grant it a new trial upon the following ground to wit: That the court erred in expressing an opinion as to the weight of evidence, as hereinbefore set forth."

This remark was "clearly" error on the part of the court. The witness's testimony was material in the case, and the only evidence in relation to the real point in issue, to wit, the purchase of the draft, and the whole contention of the defendant's counsel was directed to showing that his evidence was contradictory, and therefore unworthy of belief. If he could make the jury believe this, his case was won, and, if not, they could do nothing else than find a verdict for the claimant. And during, no doubt, an acrimonious discussion as to the admissibility of evidence, the counsel for the defendant insisting that it was admissible because the positive testimony of this witness was contradictory, and the claimant's counsel insisting to the contrary, the court cuts the Gordian knot by holding that the testimony of the witness is "clearly contradictory," and the evidence offered therefore admissible, overrules the objection, and allows the evidence to go to the jury, all of which the jury sees and hears. The claimant might as well have surrendered at this point, and allowed the jury to find a verdict in accordance with the ruling of the court; but its counsel

held bravely on to the end, although the result of the trial could have been easily foreseen.

The fundamental law of this State guaranties the right of trial by jury, where the amount in controversy exceeds twenty dollars exclusive of interest and costs. Const. Art III, § 13. "The courts have always guarded with jealous care the province of the jury." *State* v. *Hurst*, 11 W. Va. 54; *State* v. *Thompson*, 21 W. Va. 756. "If the question depends upon the weight of testimony, the jury not the court, are exclusively and uncontrollably the judge." *Ross* v. *Gill*, 1 Wash. (Va.) 88; *Keel* v. *Herbert*, Id. 203; *Gregory* v. *Baugh*, 2 Leigh, 665.

The doctrine is firmly established "that, where the evidence is parol, any opinion as to the weight, effect or sufficiency of the evidence submitted to the jury, any assumption of a fact as proved, or even an intimation that written evidence states matter which it does not state, will be an invasion of the province of the jury." 1 Rob. Pr. 338-344.

"The opinion of the court as to the weight, effect or sufficiency of the evidence submitted to the jury is a good ground for reversal of a judgment, according to all authorities. Such an opinion is certainly calculated to mislead them, whether it be communicated to them in the form of an instruction, or be merely expressed by the court in their presence in the progress of the trial. In either case they are authentically informed of the opinion, and it must have an influence upon their judgment—probably as much in the one case as in the other; but whether the same, or more, or less, the principle involved is not affected." *McDowell's Ex'r* v. *Crawford*, 11 Gratt. 377.

It is held in *People* v. *Bonds*, 1 Nev. 36: "There is nothing in the point made by respondent's counsel that this was not a formal instruction, but merely a remark made to counsel. Such a remark made by the presiding judge in the hearing of the jury, would have precisely the same effect as if given in a formal instruction."

In the case of *State* v. *Harkin*, 7 Nev. 381 it is held: "It is evident that the opinion of the court can be as effectually conveyed to the jury by expressing it in their hearing, while ruling upon an objection to evidence, as by em-

bodying it in what purports to be a declaration of the law for their instruction. Accordingly, and we think correctly, it has been held that the judge has no more right to volunteer before the jury his opinion upon a material fact in controversy, while deciding a question of law on the trial, that he has to charge the jury in respect to such fact. * * * The right to a decision on the facts by a jury uninfluenced and unbiased by the opinion of the judge, has been deemed worthy of a constitutional guaranty. It can not be lawfully denied by the simple evasion of looking at the jury, or foisting the opinion into a ruling upon the testimony."

In *McMinn* v. *Whelan*, 27 Cal. 300, 319, the court held: "From the high and authoritative position of a judge presiding at a trial before jury, his influence with them is of vast extent, and he has it in his power by words or actions, or both, to materially prejudice the rights and interests of one or other of the parties. By words and conduct he may, on the one hand, support the character or testimony of a witness, or, on the other, may destroy the same, in the estimation of the jury, and thus his personal and official influence is exerted to the unfair advantage of one of the parties, with the corresponding detriment to the cause of the other"—as was the result in the present case.

The counsel for the defendant in error, in his brief, insists that the objection was not made in time, and says: "It is enough to say that the remark was not objected to when it was made, nor at any time before the verdict. If the remark was objectionable, and the bank had intimated in any way that it objected to it, the court might have told the jury not to regard it, or might otherwise have done away with any improper influence which the remark may have exerted. But what harm can have come to the bank from the statement by the court of what was obviously true? The two statements of the witness were in writing, and were before the court and jury. No one could hear them both without perceiving at once that they were contradictory, and the court merely stated what was patent to every one who listened to the evidence."

As to the last proposition, it is sufficient to say this Court

might differ with the learned and shrewd counsel for the defendant in error, yet it would not be proper to so state, because of the influence it might have on a jury on re-trial of this case. Where, at different times, a witness makes statements apparently contradictory, the law requires that they be reconciled, if possible; and, if the jury had been left unbiased by an expressed opinion of the court, under the light furnished them by counsel they might have been able to do this. But this was a question for the determination of the jury, and not for the court.

The general rule is that an objection must be made, and an exception reserved, at the time of an erroneous ruling or other error committed by the court, and can not be taken advantage of after verdict, and on motion for a new trial. *Nadenbousch* v. *Sharer*, 2 W. Va. 285; *Robinson* v. *Pitzer*, 3 W. Va. 335; *Wickes* v. *Railroad Co.*, 14 W. Va. 157. The reason for this rule is given in the opinion of Judge DANIELS in the case of *Telegraph Co.* v. *Hobson*, 15 Gratt. 138, as follows:

"It is incumbent on him to show that he saved the point, or took the exception in the manner already indicated, or in some more solemn form, either at the time when the opinion of which he complains was given, or at least before the verdict was rendered. In the absence of such showing justice to his adversary would require that he should be held to have yielded to said opinion. It is not just or reasonable that he should be allowed to take his chances before the jury, and, in the event of defeat, then deprive his successful opponent of the benefits of the verdict by an exception which, if insisted on during trial, might have been met and counteracted by the latter."

But these reasons do not apply, where the exception is not to a ruling on a point of law but as to the expression of the court on a question of fact at issue before the jury, so material to the case that the error can not otherwise be cured than by discharging the jury and awarding a new *venire.*

In this case the plaintiff's in error's claim depended entirely on the evidence of the one witness. He was neither impeached nor contradicted by other evidence. If the jury

believed him, it was bound to find for the claimant; if it disbelieved him, the usual custom of banks as to receiving and disposing of such drafts would be potent in determining their verdict. The question of this belief depended on whether he had made contradictory statements alone. But the court settles this question by virtually instructing the jury that the witness' statements are "clearly contradictory," and for that reason permits them to hear testimony as to the customs of banks that would not otherwise be admissible. Here, both by his statement and conduct, taken together, he prejudices the claimant's case. Suppose the counsel had at once objected; could the court have made any statement to the jury that would have cured the error? He could not change his ruling, and tell the jury the court was mistaken, and cure his conduct by ruling out the testimony, because then he would prejudice the opposite party to the same extent, besides placing himself in a false position. To tell the jury to disregard his remarks would amount to nothing, especially if the testimony objected to was not withdrawn. Hence, the error was incurable, and could only be obviated by discharging the jury and ordering a new *venire.*

By permitting the case to proceed without exception, the verdict of the jury might have proved the remarks of the court to be harmless error, and the party injured could avoid the necessity of placing the judge in the humiliating position of acknowledging that his inconsiderate remarks had made it necessary to discharge the jury and start the trial anew. Neither could the opposite party complain, because it could make no possible difference to him whether the jury was then discharged, and a new *venire* directed, or wait until a verdict was rendered in accordance with the finding of the judge, and then submit to a new trial. The effect would be the same, as in either case the battle had to be fought from beginning to end.

The authorities agree in holding that the court can not cure inconsiderate remarks of this character by any statement he may make to the jury, because of "their proneness to ascertain the opinion of the judge, and to shift their responsibilities from themselves to the court." *State*

v. *Ah Jong*, 7 Nev. 152.   He should exercise great care not to intimate in any manner his opinion upon any fact at issue.  "He can not do so directly or indirectly, neither explicitly nor by innuendo; and the effect of such an opinion can not be obviated by announcing in distinct terms the jury's independence of him in all matters of fact."   *State* v. *Dick*, 2 Winst. 47 ; *State* v. *Ah Jong*, 7 Nev. 152.

In the case of *State* v. *Tickel*, 14 Nev. 510, the court says : " Whether or not appellant had succeeded in showing the witness to be unworthy of belief was a question to be decided by the jury upon legal proofs, admitted without comment or instruction by the court, upon questions of fact.   It is true, the court did not address the jury personally; but it might as well have done so, for no one else had aught to do with the question of fact then before the court, and no one else could have been influenced against appellant, or in favor of the state, by the remark.   It is entirely natural that jurors do, and proper that they should, listen attentively to, and be greatly influenced by, all remarks of the court.   They have the right to confide in its expressed opinions, and it is their duty to obey its legal instructions.   It may be said that the jurors may be presumed to know the law that the court has not the right to instruct them or give its opinions upon questions of fact, and that therefore they ought not to be, and will not be, influenced thereby.   In my opinion, experience does not justify such conclusions; but, at any rate, courts can not presume against the natural result of remarks or instructions improperly made.   If the court in this case had informed the jury it had no right to comment or instruct them upon questions of fact, and that they must not be influenced by what it might say, still its expressed opinion must have influenced them.   They would have known the opinion of the court then, as now, and it would have left its impression upon their minds, however hard they might have tried to escape it."

These remarks are as applicable to this case as to the one before that court.   The judge had expressed his opinion; the jury heard it, and nothing could eliminate it from their minds.   The remarks and ruling of the court

were equivalent to instructing the jury that the witness was unworthy of belief, as under the law astute counsel could easily convince a jury that, when a witness' testimony is "clearly contradictory," it is unworthy of belief, and therefore should be disregarded in making up their verdict. Thus the claimant's constitutional right to a trial by a fair and impartial jury was destroyed, and the whole trial was rendered nugatory, and there appears to be no good reason why the prejudiced party should not take advantage of the wrong on a motion to set aside the verdict.

There is no intention to intimate in the slightest degree that the circuit judge purposely committed the error complained of, but that he inconsiderately did so. The effect, however, was the same in either case; probably stronger in the latter, as the jury would regard it as an unbiased opinion of the court. That it was a grievous mistake, he himself must admit on a dispassionate consideration thereof, and it is only to be regretted that he did not by the exercise of his plenary powers obviate the unpleasant necessity of this Court commenting on and correcting the error.

As the case must be remanded for a new trial it would not be right for the court at this time to pass upon the weight or admissibility of the evidence, as by so doing it might be led into the same error committed by the Circuit Court, to the prejudice of one or the other of the parties to this controversy.

The judgment of the Circuit Court is therefore reversed, the verdict of the jury set aside, and the case is remanded to the Circuit Court, to be therein tried before a fair and impartial jury.