JAMES N. STEINBRECHER, *et al.*

*v*

BILL H. JONES

(No. 12574)

Submitted January 17, 1967.  Decided, March 7, 1967.

*Greene, Ketchum, Baker & Pauley, Lawrence L. Pauley,* for appellant.

*Levy & Patton, Joe N. Patton,* for appellees.

BERRY, JUDGE:

This appeal involves an action brought by James N. Steinbrecher and Dorcie L. Steinbrecher in the Circuit Court of Cabell County, West Virginia, against Bill H. Jones, a contractor, for damages resulting from the defective erection of a house in a subdivision of Huntington, West Virginia, on land owned by the plaintiffs. Plaintiffs sued for $3500 and recovered a judgment for $2700 on June 15, 1964, which became final by the overruling of a timely motion to grant the defendant a new trial on September 24, 1965. Upon application to this Court an appeal was granted from said judgment on May 23, 1966.

In order to prepare the site and construct the house, the parties entered into a contract dated May 17, 1962, which contains a number of paragraphs and clauses, which later became the subject of dispute and which will be discussed as they become involved in the disposition of the case. The exact specifications and plans are not set forth in the contract as such, but are incorporated in it by reference, and among these is a paper labeled, "Description of Materials", which is a VA-FHA Form used by the United States Government and contains mostly printed catchwords with boxes to be checked or a small space for explanation to be filled in; and consequently, the lack of adequate explanations in this form is likewise the subject of a great deal of dispute.

The complaint in this case charged the defendant with failure to construct in accordance with the plans and specifications, and with failure to do the work in a "good and workmanlike manner" which was the terminology in the contract stating how the work was to be done. Plaintiffs allege they will be required and have been required to expend large sums of money

to correct these deficiencies. Defendant is also accused of having represented that he followed the plans and specifications when in fact he did not. Defendant, of course, denied all these charges. In addition, he set up the defense that plaintiffs had accepted the house as it was, because there was a paragraph in the contract which stated that occupancy by the owner would constitute acceptance of the house as completed according to the agreement, and that the owner did move in and this immediately released him. It appears that the price of $21,500 agreed upon for the house had actually been paid by the owners after they moved in and occupied the house.

The court, in a pretrial order, found that the issues were whether or not the defendant did construct the house as agreed, what damages have been suffered if it was not properly constructed, and did the plaintiffs, by occupying the house, accept it so as to foreclose themselves from complaint about the matter.

Errors are assigned in this appeal to the effect that there should have been a directed verdict for the defendant, that only concealed defects should be the subject of action, that the evidence concerning the reason plaintiffs moved into the house before its completion was inadmissible, that damages were improperly proved concerning the aluminum gutters, the well, and the septic tank, that a mistrial should have been granted because of prejudicial remarks of the court, that Instructions 3 and 4, offered by the plaintiffs and given by the court, were improper and constituted reversible error.

At the time the plaintiffs moved into the house, September 15, 1962, certain obvious defects existed, such as improperly mounted or cracked tile, bath fixtures off-center, piers in the crawl space improperly distanced, bridging omitted between certain joists, cracked or split moulding or trim, and a commode lid or seat so placed that it had to be raised in order to close the bathroom door. In addition, there were other

defects that could not have been easily discovered in advance of the moving, such as unlevel bathtub, leaking aluminum gutters, inadequate water supply, odoriferous septic tank, water under the house, and in addition, certain ones that came later such as settling of the house, separation of the front stoop from the house, further damage to tile, etc.

The reason the plaintiffs moved into the house before its completion was due to the fact that they were living in a house owned by the defendant who sold the house to Donald Long, who, at the time he attempted to take possession, found the plaintiffs occupied the house and had no other house to move into. After trying unsuccessfully to get possession and being told various stories by both the plaintiffs and the defendant as to when the new house would be completed, he finally threatened to evict the plaintiffs by legal methods if they did not vacate the house. The plaintiffs then moved into the new house at a time when it was substantially although not fully completed. Among unfinished work to be done were the installation of a furnace, some rough grading, and revamping of the electrical system which apparently had been improperly installed originally. The result was that workmen of various types continued to work in the house a few hours at a time even after the plaintiffs had moved in. The evidence does not indicate any formal agreement between plaintiffs and defendant that the clause relating to occupancy as waiving defects was to be modified, but it is obvious from the evidence that both plaintiffs and defendant were in an embarrassing position and acquiesced in this solution. Evidence on other matters indicates that the parties did modify the contract orally in some important aspects, such as completely reversing the floor plan and adding another room.

After the plaintiffs moved in, they complained at intervals about the various defects heretofore mentioned and defendant made efforts to correct some of

them but was unsuccessful in correcting such defects to the satisfaction of the plaintiffs, so that substantially they remained uncorrected up to the time of the institution of this action.

Discussion of the individual defects is necessary to understand the assignments of errors that there is no cause of action for certain items, or, if there was, that the damages were improperly proved.

The aluminum gutters leaked, and the testimony indicates that this is a characteristic of aluminum gutters unless they are very carefully sealed at the joints with a mastic compound, since the joints are slipped together instead of being soldered. In making the estimate of the cost of eliminating these leaks, a witness for the plaintiffs included a figure of $200 for taking these gutters down and replacing them with soldered galvanized ones that would not leak. Defendant contends that the contract provided for aluminum gutters, as it does, and that the measure of damages would be the amount to keep them from leaking and that to charge him with a material of a different type would result in the furnishing of material not required to be furnished under the provisions of the contract. Consequently, he objected to this evidence.

As to the well, the evidence shows that after being drilled 150 feet it produced a relatively meager supply of 20 gallons an hour, making 480 gallons in 24 hours, but in order to obtain that much, it would be necessary to pump it each time it returned to the static water level of about 50 to 60 feet below the surface. Consequently, to remedy the situation and supply at the time required the 150 gallon minimum a day that a family needs, either there would have to be larger storage tanks installed, or the well would have to be drilled deeper to allow a sump for the accumulation of more water. Plaintiffs' evidence gives no figures on these items, but, instead, consists of testimony that a new well of the same depth, using the same pump,

would cost $375. This figure was used as proof of damages for this item. Defendant objected to this testimony on the ground that in effect this forces him to drill a free well and allows the plaintiffs to have the first well free of cost. Unfortunately, there was no clause in the contract as to the amount of water the well was to produce, and the specifications indicate an "Individual (Private) System," without any further explanation.

The evidence pertaining to the septic tank is likewise unsatisfactory, as while the testimony was that there was an odor in the house and around the tank which Mr. Jones had unsuccessfully tried to eliminate by increasing the length of the vent pipe in the house and suggesting that Mr. Steinbrecher cover the tank with dirt when he finished the grading, the expert whom the plaintiffs produced to testify as to this matter was unable to say on cross-examination what was wrong with the tank and related system, but stated that to correct the trouble "I figured on putting a leach bed in", and estimated it would take $300 to repair it, although admittedly he was not sure what he was repairing until he took it apart. Evidence indicates that defendant had dug up certain parts of the tank system seeking a leak, but found none, although plaintiffs exhibited photographs of "foul smelling water" pooled around the soil pipe where it descended into the ground.

The matter of the unlevel bathtub was explained by the husband plaintiff as not being an obvious defect because he did not know the water would not drain out until he tried to take a bath in it. The expert estimated it would cost $300 to take the tile off and ascertain the cause of the tub being unlevel and then to replace the tiles.

The settling of the house was largely in the center, and plaintiffs attributed it to the piers being spaced out about a foot or more than they were supposed to be under the main girder, but this was not discovered

until months after they had been in the house. Defendant sought to remedy this by installing temporary supports and attributes the settling to the presence of water under the house, but plaintiffs claim he never returned to finish the work. Defendant says they did not get rid of the water, so he could not complete the job.

The assignment of error relating to remarks of the court seems largely to refer to an episode in which the expert was asked if the trim should have been split, to which there was an objection, and the trial judge in overruling it said that it did not take an expert to know that the trim in a $21,500 house should not be split. There was contradictory evidence as to whether there was any split trim. On another occasion, when a loan officer of a bank was testifying that he had passed the house for the purpose of releasing the final payment to the contractor, an objection was made to his testifying as to technical matters of house construction, whereupon the trial judge remarked that his passing the house had nothing to do with the problem of failure to build it right, which defendant contends is an expression of opinion on matters that should have been left to the jury.

The principal assignment of error relied upon by the defendant in this appeal relates to clause 6 of the building contract, which reads as follows:

"6. OCCUPANCY. Owner may not occupy the house until it is paid for in full. Occupancy by Owner will constitute an acceptance of the house by Owner as having been completed according to the terms and conditions of this contract and the plans and specifications *inluded* herein."

Assignments of error numbers I and III are based on this clause in which it is alleged that the trial court erred in overruling defendant's motion for a directed verdict at the conclusion of the plaintiffs' evidence and at the conclusion of all the evidence, and the admis-

sion of the testimony of Donald E. Long, over the objection of the defendant, with regard to the obtaining possession of the house in which the plaintiffs were residing prior to the time they occupied the house which was being constructed by the defendant. It is the contention of the defendant that the occupancy by the plaintiffs of the house in question, constructed by the defendant, constituted an acceptance of the house as having been completed according to the plans and specifications, as provided for in paragraph 6 of the contract thereof. The primary issue upon which the plaintiffs' case is based is whether the defendant constructed the house in a workmanlike manner in accordance with the contract plans and specifications. The plaintiffs contend that clause 6 was either altered by mutual agreement of the parties or was waived by both sides of this dispute. Although the contract between the parties was orally or in writing modified and altered in certain important respects, such as being completely reversed from the original plans, by additions being added and by changing the length of the original building, it is contended by defendant that there was no consideration to support such modifications and alterations of the written contract and therefore the provisions of occupancy contained in clause 6 could not be considered altered or amended even if it had been the subject of an attempt to alter it. This position is well taken because not only must such modification or alterations be by mutual agreement but must be based upon a valid consideration, and the original consideration of the construction for the house can not be used as consideration for any agreement of modification or alteration in connection therewith. *Bischoff v. Francesa*, 133 W. Va. 474, 56 S. E. 2d 865; *State ex rel Coral Pools, Inc. v. Knapp*, 147 W. Va. 704, 131 S. E. 2d 81. The undisputed facts in the case at bar indicate that there was no consideration for the building of the dwelling house in question other than $21,500 agreed upon in the original written contract, and therefore, it is clear that there was no consideration to

support any additional agreement for modification or alteration of the original contract. This proposition is clearly stated in point 5 of the syllabus of the *Bischoff* case, in the following language:

"In the absence of a mutual agreement, based on a valid consideration, establishing modification of a written contract, there can be no subsequent modification of such a contract without consideration, and the mere promise of one of the parties to perform what he is already bound to do under the terms of the contract is not a sufficient consideration."

However, the fact that there was no consideration to support an agreement of modification or alteration does not prohibit the waiver of any rights that the parties may have under the provisions of a building contract, and from the facts in the instant case it would appear that the defendant waived the provisions with regard to occupancy by the owners as contained in clause 6 of the building contract. In the first place, the plaintiffs were required to move out of the house in which they were residing before the house being constructed by the defendant was completed. This was made necessary by the actions of the defendant, who owned the house in which the plaintiffs were residing and was renting it to the plaintiffs. The defendant sold this house to Donald E. Long, with right of occupancy, before the house he was constructing for the plaintiffs was completed. Donald Long forced the plaintiffs to move in order to allow him to occupy the house he had purchased from the defendant, and they in turn moved into the unfinished house being constructed for them by the defendant, with his knowledge; and it is admitted in defendant's brief that he acquiesed in the occupancy of the house by the plaintiffs before it was completed. The defendant, by allowing the plaintiffs to occupy the house before payment in full was made, waived the provisions contained in the first sentence of clause 6 of the building contract as it is undisputed that final payment was not

made until some time after the plaintiffs had occupied the house in question.

The third assignment of error, pertaining to the admission of testimony of Donald E. Long in connection with obtaining possession of the house in which plaintiffs were residing prior to the time they occupied the house being constructed for them by the defendant, was based on the defendant's contention that it was irrelevant and immaterial to any issue in the case which, if true, would warrant the exclusion of such evidence. *Ward v. Smith,* 140 W. Va. 791, 816, 86 S. E. 2d 539. However, it appears that this testimony was relevant and material as to the waiver of the provisions contained in clause 6 of the building contract. This evidence shows the reason for the plaintiffs moving into the unfinished building and that it was necessitated by the action of the defendant selling the house in which they were living before the completion of the house he was building for them; and if he did not desire to waive the provisions of clause 6 of the building contract with regard to the acceptance and occupancy of the house by the plaintiffs as having been completed in accordance with the terms and conditions of the building contract under the circumstances involved in the occupancy of the dwelling by the plaintiffs, it was the duty of the defendant to object to or protest such occupancy. It has been held that silence, where there is a duty to speak, may result in the waiver of one's rights. 19 M. J., Waiver, §2; *May v. Martin,* 205 Va. 397, 137 S. E. 2d 860. Then, too, the defendant, knowing that the dwelling had not been completed when the plaintiffs moved in, continued working on the house to complete its construction and it has been held that this conduct on the part of the defendant may amount to a waiver. 13 Am. Jur. 2d, Building, Etc. Contracts, §75; *Stonega Coke & Coal Co. v. Addington,* 112 Va. 807, 73 S. E. 257, 37 L. R. A. (N. S.) 969.

It appears from the defendant's brief that the third assignment of error based on the ground that Long's

testimony was irrelevant and immaterial was because of a provision in the building contract that certain property owned by the plaintiffs at 3504 Route 60 East, Huntington, West Virginia, was to be accepted by the defendant as a trade-in and that an allowance of $5000 was agreed upon for said property but that if it was sold before the completion of the dwelling house being constructed by the defendant that the trade-in allowance be waived and that the plaintiffs would pay to the defendant the $5000. Apparently, this clause did not concern whether or not the house in which the plaintiffs were living was sold before the completion of the house being constructed for them by the defendant. This contention might have had some merit if the property referred to in the contract had been the same property in which the plaintiffs were living and which was owned by the defendant and rented to the plaintiffs. However, it is not the same property. The record clearly indicates that the house in which the plaintiffs were residing and which was being rented from the defendant was located at 218 High Street in Altizer and that the property referred to in the contract was owned by the plaintiffs and located at 3504 Route 60 East, Huntington, West Virginia. Therefore, the question of waiver in connection with clause 6 of the building contract was a matter for jury determination in connection with the case at bar if it had been submitted properly, thus allowing the issue of damage for faulty construction to be considered by the jury. 13 Am. Jur. 2d, Building, Etc. Contracts, §55 et seq.

The second assignment of error, that the trial court erred in overruling the defendant's motion to exclude any evidence of damage except as to concealed defects, is without merit under the facts and circumstances of the instant case because it would only be applicable in any event where the owners accepted unqualifiedly the completed construction and approved of all work as having been done in a workmanlike manner in ac-

cordance with the plans and specifications. Of course, in such case any damages claimed by virtue of concealed defects which could not have been discovered by due diligence when the work was completed and accepted would not be barred from recovery on the part of the owner. 13 Am. Jur. 2d, Building, Etc. Contracts, §75; *Brent v. Head, Westervelt & Co. et al.,* 138 Iowa 146, 115 N. W. 1106.

Assignments of error numbers IV, V, and VI relate to alleged improper proof of damages concerning replacement of gutters, the drilling of a well and the repairing of the septic tank. Proof of damages in a case based on a contract such as the one at bar can not be based on speculation or conjecture as to the amount of damages. *Ripley v. Whitten Transfer Co.,* 135 W. Va. 419, 63 S. E. 2d 626; *Konchesky v. Groves & Sons Co.,* 148 W. Va. 411, 135 S. E. 2d 299. The recovery of damages in the instant case is based on the failure to conform to the plans and specifications which are a part of the contract and on the work in certain instances having been performed in an unworkmanlike manner.

The evidence with regard to the damages claimed by the plaintiffs pertaining to the gutters and down spouts was based on the fact that the gutters leaked. The contract and specifications call for the use of aluminum gutters. Aluminum gutters were installed but the evidence upon which the jury was allowed to consider damages for this item was the cost of replacing the aluminum gutters with galvanized gutters and the cost therefor was $200. The evidence as to this item of damages was improper because the contract called for aluminum gutters and the amount of damages testified to was based on the cost of replacing the gutters with a type not called for in the contract. The proper proof of damages allegedly suffered for this item of damages would be the cost of repairing the gutters installed to keep them from leaking, or,

at least, the proper attempt to do so which apparently was not done in the installation thereof.

The proof of damages concerning the well, which, it is alleged, did not furnish sufficient water, was merely an estimate made by a witness of the cost to drill another well which was the exact amount for the drilling of the well involved. The specifications with regard to furnishing the water supply merely provided for "Individual (Private) System" and an asterisk thereafter refers to a note which calls for a separate drawing of the specifications in detail concerning such system. These separate details apparently were not included or attached to the specifications so we have only the brief general statement. However, the proper measure of damages with regard to this item would be the cost to drill about 50 feet deeper or to provide larger storage tanks which, according to the testimony of the plaintiffs regarding this matter, would have been necessary to furnish an adequate water supply. Therefore, the admission into evidence of $375 to drill another well would not be a proper proof for damages as a result of the alleged improper furnishing of a private water supply. In any event, the cost of drilling 50 feet farther or the cost of additional or larger storage tanks would be the proper method of ascertaining damages for this item. See *Thomas & Moran v. Kanawha Valley Traction Co.*, 73 W. Va. 374, 80 S. E. 476.

The proof with regard to the damages in connection with the septic tank is uncertain and speculative. The evidence with regard to this item was that the witness was unable to say what was wrong with the septic tank and speculated that it was the leach field and estimated it would cost $300 to repair it although he admitted he was not sure what to do in order to make repairs. The defendant's evidence in connection with the septic tank was that a check was made and nothing was found to be wrong with it.

As a general rule, the proper measure of damages in such cases involving building contracts is the cost of repairing the defects or completing the work and placing the construction in the condition it should have been in if properly done under the agreement contained in the building contract. The alternate rule in some states relating to the measure of damages as being the difference in value between what is built and what was supposed to have been built, sometimes applied where extensive reconstruction is necessary at a cost grossly disproportionate to the value of the structure, is not involved under the facts presented by the evidence produced at the trial held in this present case, so we do not need to discuss it. 13 Am. Jur. 2d, Building, Etc. Contracts, §79, 76 A. L. R. 2d 805; *Baldwin v. Alberti,* 58 Wash. 2d 243, 362 P. 2d 258; *Lambert v. Jenkins,* 112 Va. 376, 71 S. E. 718.

The seventh assignment of error relating to the overruling of the defendant's motion for a mistrial based on certain alleged prejudicial remarks by the court in the presence of the jury has heretofore been discussed in referring to specific remarks made by the court wherein an opinion was expressed before the jury in overruling the objection by the defendant. A trial judge should use care in expressing an opinion in overruling objections because it has been held that where a trial judge, in overruling objections to the admission of testimony during the progress of the trial, expresses an opinion as to the material facts in issue, in the presence and hearing of the jury, such expression creates reversible error if it is so prejudicial it cannot be cured at the trial. The trial judge has no more right to volunteer before the jury his opinion upon material facts in controversy than to charge the jury in respect to such facts. *Neill et al v. Rogers Bro's Produce Co.,* 38 W. Va. 228, 18 S. E. 563. Since this case is being reversed on other grounds it is not necessary to decide whether such statements complained of herein constitute reversible error.

The eighth assignment of error relates to the giving by the court of plaintiffs' instructions 3 and 4 over the objection of the defendant. Instruction number 3 reads as follows:

"The court instructs the jury that in determining the question of whether or not Jones breached his contract in the building of the house, you should be guided by the requirement of the contract that Jones was to do 'all work . . . in a good and workmanlike manner', along with the specific requirements of the plans and specifications. Further, as to any part of the work done by Jones not specifically described in the plans and specifications as to the manner and kind of materials to be employed, or the design to be followed, you are instructed that Jones had a duty to employ such materials and methods of construction as would meet the requirement of performance in a 'good and workmanlike manner'. ."

There was no objection to the first sentence of this instruction. The objection was as to the second sentence on the ground that there was no evidence to support the statement as to work done not described in the plans and specifications. The objection to this instruction is not well taken because it would make no difference whether the work done was specifically referred to in the plans and specifications or not. The giving of this instruction would not constitute reversible error.

Instruction number 4 reads as follows:

"If the jury believes from a preponderance of the evidence, including the actions of the parties, that neither the plaintiffs nor the defendant considered the house to be finished on September 15, 1962, when the plaintiffs moved into the house, but that both parties knew the house to be unfinished at said time, then you must consider that the

parties to the contract *altered and amended* their agreement so that the occupancy thereof by the Steinbrecher family did not constitute an acceptance of the house by the owner as having been completed according to the agreed plans and specifications." [Emphasis supplied]

The objection to this instruction was on the same grounds that the motion was made for a directed verdict under the provisions of paragraph 6 of the building contract. Inasmuch as we have heretofore shown that there was no consideration to support an agreement for any modification, alteration or amendments of the building contract, which is necessary in such cases, the giving of this instruction as written, upon which recovery was based, would therefore constitute reversible error as a matter of law. We have heretofore indicated that under the facts and circumstances of this case the defendant may have waived the provisions of paragraph 6 of the building contract and we are of the opinion that this question as heretofore discussed is a question for jury determination under a proper instruction conforming to the facts contained in the evidence of this case and should be a permissive instruction instead of a mandatory instruction.

For the reasons stated herein, the judgment of the Circuit Court of Cabell County is reversed, the verdict is set aside, and a new trial is awarded to the defendant.

*Reversed; verdict set aside; new trial awarded.*