525 S.E.2d 295

**CMC ENTERPRISE, INC., Plaintiff
Below, Appellee,**

v.

**KEN LOWE MANAGEMENT
COMPANY, Defendant
Below, Appellant.**

No. 26431.

Supreme Court of Appeals of
West Virginia.

Submitted Nov. 3, 1999.

Decided Dec. 3, 1999.

Dissenting Opinion of Justice
Maynard Dec. 16, 1999.

Susan R. Snowden, Esquire, Martinsburg, West Virginia, Attorney for Appellant.

Duke A. McDaniel, Esquire, Petersburg, West Virginia, Attorney for Appellee.

PER CURIAM:

This case is before the Court upon the appeal of the Appellant, Ken Lowe Management Co., from the November 9, 1998, order of the Circuit Court of Grant County, wherein following a bench trial,[1] judgment was entered in favor of the Appellee, CMC Enterprises, Inc., in the amount of $42,973 with interest from July 1, 1996. The Appellant argues that the lower court erred: 1) by failing to apply and construe the contract against the Appellee, the maker of the contract; 2) in allowing the Appellee to recover for additional work done on the project in the absence of any written change orders; 3) in making findings of fact that were inaccurate and in failing to adopt material facts introduced at trial;[2] and 4) by not allowing interest on the $9,027 credit due to the Appellant prior to granting the reduction in judgment.

## I. FACTS

The Appellant owned a parcel of real estate in Grant County, West Virginia. On February 29, 1996, the Appellant entered into a contract with the Appellee for the remodeling of the Social Security Administration building for a lump sum amount of $80,195.[3] Pursuant to the terms of the contract, the Appellee was to perform all work "according to specifications outlined in contract documentation for Social Security Administration Building[ ][d]ated November 13, 1995[,][4] [a]nd meet or exceed all specifications and requirements as provided in U.S. Government lease No. GS 03B 60062."[5] Further, the work was to be performed in accordance with the "[f]loor layout . . . shown on SK–2/96 dated February 27, 1996[,]" which was attached to the contract. There were no provisions or requirements in the contract that change orders had to be in writing.

In the Appellee's trial exhibit numbered 18, the lease and supplemental lease agreement from GSA to the Appellant was not received by the Appellant until May 2, 1996. The Appellee maintained that the lease referred to apparently was not signed or completed until after work on the project was completed. Thus, the Appellee had no knowledge or benefit of the lease agreement.[6]

On April 4, 1996, the Appellee began working on the building in accordance with the February 29, 1996, contract and the SK–2/96 floor layout.[7] Also on April 4, 1996, Francis McGafferty of the General Services Administration ("GSA") wrote to Ken Lowe, the president of the Appellant company. In that letter, Mr. McGafferty stated that "[u]pon

---

1. While the entire original record was designated by the Appellant for purposes of this appeal, the transcript of the bench trial proceedings was not part of the record.

2. The second and third assignments of error are largely the same. Consequently, we address these issues as one.

3. The Appellee had no contractual obligations with the General Services Administration ("GSA") or the Social Security Administration.

4. The contract documentation dated November 13, 1995, was a solicitation or offer between the Appellant and General Services Administration.

5. The Appellant had not yet entered into a lease with the Social Security Administration for the remodeled space at the time the contract was made.

6. The actual lease agreement superseded the solicitation or offer dated November 13, 1995.

7. The work was finished on or about June 1, 1996.

reading the contract [dated February 29, 1996] I noticed that all work was to be done in accordance with the attached space layout (existing walls, restrooms, etc.). I would caution you from proceeding in this manner until I furnish you with a copy of our final floorplan." According to the letter, the floor plan that was to be used in the remodeling was to be provided "no later than April 17, 1996." According the facsimile information found on the top of the April 4, 1996, letter from Mr. McGafferty to the Appellant, the letter was not forwarded to the Appellee until August 28, 1996.

The new floor plans with new specifications that had been prepared by Jim Bentley of the Social Security Administration and dated April 10, 1996, were received by the Appellee after April 13, 1996. The new floor plans and specification were materially different from the old plans. The evidence was uncontradicted that when the new floor plans were received, the Appellee contacted the Appellant. Subsequently, the Appellee's agents, Wardney Cosner and Dick Junkins, met with Ken Lowe on two separate occasions. During the two meetings, Ken Lowe verbally instructed the Appellee's agents to proceed under the new floor plans and specifications. The trial court found that "Wardney Cosner was told that GSA, Ken Lowe Management, or Social Security would be responsible for the difference in the new floor plan from the old [floor plan]." There also were a total of twenty-eight phone messages or facsimiles from the Appellee to the Appellant and/or GSA and the Social Security Administration.

On July 1, 1996, the Appellee, via facsimile, sent to the Appellant a ten-page document which included an invoice totaling $73,762 for additional work not covered by the original contract.

The Appellant introduced the testimony of Edward Dove, a registered professional engineer with Dove & Associates, Inc., who testified that the standard of the industry was when any additional modifications or changes of any nature to the original contract were necessary, a change order executed by all parties who signed the original construction contract was obtained. Mr. Dove further testified that when additional work is anticipated, work authorizations and/or modifications should be in writing. Mr. Dove also testified that work performed by the Appellee was not in conformance with the contract.[8] Further, Mr. Dove stated that many of the items the Appellee sought recovery for should have been included in the original contract specifications for the lump sum amount. In contrast, the Appellee offered evidence that the additional items were recoverable because a parol modification to the contract, agreed upon by the parties, had occurred. To that end, the Appellee offered the testimony of Jeanine S. Bachtel, a registered engineer for construction and renovation at Frostburg State University, who testified that it was customary in the industry not to receive written change orders if the contract did not provide for the same.

The circuit court found that "CMC built the building according to GSA plans (according to the contract)[,] and [t]hat the building now meets GSA specifications...." Further, the lower court found that "to permit the Defendant, Ken Lowe Management Company, to receive $40,000 to $160,000 worth of renovations for $80,195, plus additional cost options of a rear room of $3,800 and a roof option of $3,500, would be unjust enrichment."

## II. ISSUES

### A.

The first issue is whether the lower court erred by failing to construe the contract against the Appellee, its drafter. The Appellant argues that because the contract entered into between the parties was a lump sum contract any error by the Appellee "in failing to obtain permission from the owner of the project and real estate prior to com-

8. Francis McCafferty, contracting officer with GSA, corroborated the testimony that the Appellee's work was not performed in accordance with the contract. According to the Appellant, a letter dated April 4, 1996, from Mr. McCafferty to the Appellant, proves that the building did not meet GSA specifications and that GSA was due a credit of $14,309 as there were items to be included in the original contract price which were not installed.

mencing additional work was done in [sic] its own risk and, as such, Ken Lowe Management Company had no obligation to pay for items which it did not specifically authorize." In contrast, the Appellee argues that the contract between the parties did not contain a provision for written change orders. Consequently, the circuit court correctly decided that a parol modification to the written contract occurred.

We use the following standard of review in resolving the assigned error:

when a trial court's answers rest not on plain meaning [of the contract] but on differential findings by a trier of fact, derived from extrinsic evidence as to the parties' intent with regard to an uncertain contractual provision, appellate review proceeds under the 'clearly erroneous' standard. The same standard pertains whenever a trial court decides factual matters that are essential to ascertaining the parties' rights in a particular situation (though not dependent on the meaning of the contractual terms *per se* ). In these types of cases, the issues are ordinarily fact-dominated rather than law-dominated and, to that extent, the trial court's resolution of them is entitled to deference.

*Fraternal Order of Police, Lodge No. 69 v. City of Fairmont,* 196 W.Va. 97, 100, 468 S.E.2d 712, 715 (1996).

In support of its argument, the Appellant relies upon the well-established contractual principles that clear and unambiguous contractual provisions should be applied and not construed. *See* Syl. Pt. 1, *Fraternal Order of Police,* 196 W.Va. at 99, 468 S.E.2d at 714 (" 'It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them.' "). The Appellant's reliance upon these principles for the resolution of this case, however, completely ignores the fact that the lower court was not asked to interpret a clear and unambiguous contractual provision. To the contrary, the main issue before the lower court was simply whether the evidence supported a finding that a parol modification to the original contract oc-

curred. The contract is completely silent as to any requirement that a change in the terms of the contract need to be in writing.

This Court has previously held that " 'a written contract may be modified or its terms altered by a subsequent valid oral agreement, and this may be shown in a proper case. . . .' Syllabus point 2, [in part,] *Jones v. Kessler,* 98 W.Va. 1, 126 S.E. 344 (1925)." Syl. Pt. 2, in part, *W.L. Thaxton Constr. Co. v. O.K. Constr. Co.,* 170 W.Va. 657, 295 S.E.2d 822 (1982); *see* Syl. Pt. 2 of *State ex rel. Coral Pools, Inc. v. Knapp,* 147 W.Va. 704, 131 S.E.2d 81 (1963) ("A written contract may be altered or supplemented by a valid parol contract subsequently made."); *see also John W. Lodge Distrib., Co. v. Texaco, Inc.,* 161 W.Va. 603, 606, 245 S.E.2d 157, 159 (1978); *Wilkinson v. Searls,* 155 W.Va. 475, 484, 184 S.E.2d 735, 741 (1971); *Steinbrecher v. Jones,* 151 W.Va. 462, 470, 153 S.E.2d 295, 301 (1967).

In the instant case, the court determined that a parol modification had occurred and that the Appellee was entitled to recover additional monies based upon said modification which required additional work not contemplated by the original contract. As we indicated in *W.L. Thaxton Const. Co.,* the determination of whether there was a parol modification to a contract is left to the trier of fact, in this case, the lower court. *Id.* at 660, 295 S.E.2d at 825 ("It was for the jury to decide if the written and signed contract had been orally modified and they did so."). We will not disturb such a finding of fact unless it is clearly erroneous. *See Fraternal Order of Police,* 196 W.Va. at 100, 468 S.E.2d at 715. We conclude that the circuit court's findings were not clearly erroneous.

**B.**

The next issue is whether the circuit court erred in making findings of fact that were inaccurate and in failing to adopt material facts introduced at trial. The Appellant argues that several of the circuit court's findings of fact are contrary to the evidence introduced at trial. For instance, the Appellant maintain that the circuit court's finding that the building "now meets GSA specifica-

tions" is contradictory to the evidence introduced at trial. According to the Appellant, the building did not meet GSA specifications. Likewise, the lower court specifically found that the Appellee was led to believe that either the Appellant or the GSA would be responsible for the difference in the new floor plan from the old. The Appellant maintains that the evidence introduced at trial was that the Appellant never authorized additional work other than the security system and overtime. Finally, the Appellant asserts that the circuit court first found that the Appellant and the Appellee had "a course of dealing between the parties for written change orders and additional expenditures of funds to be approved in writing which Ken Lowe Management Company did approve[,]" then erroneously concluded that the Appellee was entitled to recover for items which were done by the Appellee without the express authority or permission of the Appellant.[9] Thus, the Appellant argues that the finding by the lower court of unjust enrichment is contrary to the facts of the case. The Appellee, however, argues that the findings of fact made by the lower court should not be reversed on appeal unless plainly wrong.

As previously stated, factual findings made by the trial are given great deference by this Court and will not be overturned unless they are clearly erroneous. *See Fraternal Order of Police*, 196 W.Va. at 100, 468 S.E.2d at 715. In the instant case, the fact that the trial court found that certain modifications had been made pursuant to written change orders, does not negate the fact that a parol modification was agreed to by the parties. Further, regarding the trial court's finding that the building met GSA specifications, it was certainly within the trial court's purview to decide what evidence was credible and what evidence was not credible. That factual finding apparently reflects that the trial court did not find the Appellant's evidence credible on this issue. From a review of the record, we find that the factual findings reflect the trial court's thoughtful review of the evidence presented and are not clearly erroneous.

## C.

■ The last issue is whether lower court erred in its calculation of the amount by which the Appellant was "unjustly enriched," by failing to factor into the calculation a credit of prejudgment interest in the Appellant's favor. The Appellant maintains that because it had requested prejudgment interest in its counterclaim, it was error for the circuit court to fail to award the Appellant prejudgment interest on the $9,027 credit the circuit court granted in the Appellant's favor. The Appellee asserts the Appellant is not entitled to prejudgment interest because the circuit court did not award the Appellant a judgment, but merely gave the Appellant a credit against the gross verdict.

We generally review decisions involving prejudgment interest under an abuse of discretion standard. *See Gribben v. Kirk*, 195 W.Va. 488, 500, 466 S.E.2d 147, 159 (1995). West Virginia Code § 56-6-31 (1997) provides, in pertinent part, that "[e]xcept where it is otherwise provided by law, every judgment or decree for the payment of money entered by any court of this State shall bear interest from the date thereof ...." *Id.* West Virginia Code § 56-6-27 (1997), however, is the general authority for awarding prejudgment interest in a contract action. *See First Nat'l Bank of Bluefield v. Clark*, 191 W.Va. 623, 625, 447 S.E.2d 558, 560 (1994). That provision provides

> The jury, in any action founded on contract, may allow interest on the principal due, or any part thereof, and in all cases they shall find the aggregate of principal and interest due at the time of the trial, after allowing all proper credits, payments and set-offs; and judgment shall be en-

---

9. The actual finding made by the circuit court was:

> That throughout the course of the project, on two occasions, April 23, 1996, and May 7, 1996, CMC Enterprise Inc. provided to Ken Lowe Management Company written confirmation of additional work requested by CMC to include overtime and security system which indicated a course of dealing between the parties for written change orders and additional expenditures of funds to be approved in writing, which Ken Lowe Management Company did approve.

tered for such aggregate with interest from the date of the verdict.

W. Va.Code § 56–6–27.

In the instant case, it is evident from the circuit court's order that the Appellant was not awarded any judgment on its counterclaim.[10] Rather, recognizing that the evidence supported the Appellant's contention that it was entitled to a $9,027 credit, the circuit court correctly deducted that credit before interest was calculated on the balance due the Appellee.

### III. CONCLUSION

Based on the foregoing, the judgment of the Circuit Court of Grant County, West Virginia, is hereby affirmed.

Affirmed.

Judge GARY JOHNSON sitting by temporary assignment.

Justice SCOTT did not participate.

MAYNARD, Justice, dissenting:

(Filed Dec. 16, 1999)

I dissent because I do not believe that the appellee, CMC Enterprises, Inc., should be allowed to recover for additional work done on the remodeling project absent written change orders approved by the appellant, Ken Lowe Management Company.

This case concerns two sophisticated business entities. The rules which govern consumer transactions do not apply here. For example, when grandma contracts with an itinerant blacktop company to have her driveway paved, and there is a dispute concerning the terms of the agreement, evidence of a subsequent oral agreement will be considered in determining the proper resolution of the matter. Such evidence usually consists of the testimony of the parties, and the trier of fact is forced to choose which party is the most believable. Although the admission of parol evidence is not a perfect way to discern the truth when the provisions of a contract are at issue, it is a recognition of the fact that parties who do not regularly engage in business most likely conduct their affairs in a relatively informal manner, i.e., verbal agreements, verbal modifications, etc. Therefore, the consideration of oral evidence in cases involving noncommercial parties is often the best way to find the truth.

Commercial entities, on the other hand, are expected to have a higher level of sophistication in conducting their business. Courts should be able to presume that when commercial parties contract on projects involving substantial sums of money, these parties ensure that everything is in writing. After all, this is just good business. This presumption allows courts to avoid the conflicting testimony and credibility assessments necessary in the above-mentioned context. Instead, the issue can be decided by looking at the applicable written provisions of the contract.

In this case, unilateral modifications were made to a contract that resulted in the addition of $73,762 to the cost of the appellee's work. There is no dispute that no written change orders were executed concerning these modifications. Therefore, the trial court should have looked at the written contract and judged accordingly. Instead, this case involving sophisticated commercial entities was treated like a grandma-itinerant blacktop company case wherein the appellee was permitted to testify about verbal changes made in the contract. This is not only bad business, it is bad law. It allows one party to make unilateral modifications in violation of the written terms of a contract.

In conclusion, the majority's decision is unfair to Ken Lowe Management Company. Also, it sends a terrible message to contractors like CMC Enterprises, Inc. I would reverse the judgment below and enforce the terms of the contract as written. Accordingly, I dissent.

---

**10.** The Appellant was seeking $100,000 in damages for fraud and misrepresentation in its counterclaim, as well as the $9,027 credit, plus interest and costs.